343 So.2d 360 (1977)
FIRST NATIONAL BANK OF COMMERCE
v.
The WATERGATE, INC., & Williams Boulevard Land Company.
No. 7853.
Court of Appeal of Louisiana, Fourth Circuit.
February 15, 1977.
Rehearing Denied March 15, 1977.
Writ Refused May 6, 1977.
Shushan, Meyer, Jackson, McPherson & Herzog, Robert P. Chatelain, New Orleans, for plaintiff-appellee.
Bridgeman & Conway, James R. Conway, III, Metairie, for intervenor-appellant.
*361 Before GULOTTA, SCHOTT and MORIAL, JJ.
MORIAL, Judge.
Crescent Pile Driving Co., Inc. (Crescent) appeals from a judgment denying its motion to set aside a sheriff's sale and holding its materialmen's lien inferior to a mortgage of First National Bank of Commerce (FNBC) on certain property situated in Jefferson Parish. Crescent also appeals a ruling of the district court denying its exception of unauthorized use of summary proceedings.
On February 13, 1975 FNBC filed a petition for executory process seeking to have the sheriff seize and sell certain immovable property, designated as Plot A-3, located in Highway Park Subdivision in Jefferson Parish. On March 7, 1975 FNBC filed a motion to have the court judicially rank its mortgage along with any other privileges recorded against Plot A-3. Prior to becoming the mortgagee on November 7, 1973 FNBC obtained from a licensed surveyor an affidavit of "no work" on Plot A-3. See LSA-R.S. 9:4819. This affidavit stated that no building material or equipment had been delivered or deposited on the premises and that no work of any kind had been commenced. On March 25, 1975 Crescent filed an intervention alleging its materialmen's lien to be superior claiming it had done work on the premises prior to the recordation of FNBC's mortgage.
When Crescent originally worked on the property it was designated as Plot A-1. Subsequently, the Plot A-1 was divided into Plots A-2 and A-3 which plan of resubdivision was approved by an ordinance of the Kenner City Council on November 13, 1972. FNBC is foreclosing on the property designated Plot A-3.
At the time of its intervention Crescent filed exceptions of prematurity and unauthorized use of summary proceedings. The prematurity exception was rendered moot by a subsequent judicial sale. In the other exception, Crescent argued that the legislature in Act 130 of 1974 deleted the words and privileges from Section 7 of LSA-C.C.P. Article 2592 thus eliminating the use of summary procedures for the purpose of ranking privileges. The district court held that the omission of the words and privileges from LSA-C.C.P. Article 2592(7) was a typographical error and that pursuant to LSA-R.S. 24:253 the Louisiana Law Institute had the authority to correct such an error. We affirm the district court on this point.
It is obvious from a reading of the purpose of House Bill No. 341 and the title of Act 130 of 1974 that the only deletion intended in Paragraph 7 of LSA-C.C.P. Article 2592 was of the final "and" which was the last word in former Paragraph 7. The footnote following the updated version of LSA-C.C.P. Article 2592 explains that the omission of the words and privileges was an error in the Legislative Bureau publication and did not reflect the intent of the Legislature.
On April 9, 1975 a judicial sale was held and FNBC as seizing creditor purchased the property for $90,500.00. The advertisement of the sale stated it was to be transacted on cash terms at the time of purchase. FNBC did not transfer any monies to the sheriff; however, at this time, title was not transferred pending a judicial ranking of the various claims on the property. Crescent opposed the non-payment at the time of sale and sought to have the sale declared null and void. The district court rendered judgment denying Crescent's motion to set aside the sale and concluded that the FNBC mortgage was superior to Crescent's lien.
There are three issues on appeal. We have hereinabove disposed of the first issue concerning the ranking of privileges by summary process. The second issue is whether or not the sheriff's sale should be rescinded and another sale ordered because of the plaintiff's failure to pay the full purchase price at the time of the sale and the third issue is whether or not the affidavit of "no work" firmly established the superiority of the FNBC mortgage.
Crescent argues that under LSA-C. C.P. Article 2375 FNBC was required to *362 pay over to the sheriff the purchase price. LSA-C.C.P. Article 2375 provides only for the situation where there are other creditors with inferior liens. A different procedure is set up under LSA-C.C.P. Article 2374, where there are creditors with claims superior to that of a seizing creditor. In that instance, the purchaser pays to the sheriff only that portion of the sale price which exceeds the amount of superior claims. In the case herein, there had been no ranking of claims at the time of sale. At that point in time, the parties were unable to determine which article of the Code of Civil Procedure was applicable. Therefore, under those circumstances the most practical course was to suspend any transfer of the funds. Especially, is this true, in light of the fact that the seizing creditor was also the purchaser, and, if it was held to have the superior lien, it would not pay any amount to the sheriff since the purchase price did not exceed the amount of its mortgage. See LSA-C.C.P. Article 2374.
Crescent also argues that the provisions of LSA-R.S. 13:4360 B apply herein and that it has a right to demand a resale because plaintiff failed to pay the purchase price within thirty days of the sale. We find LSA-R.S. 13:4360 B inapplicable. That section provides for the remedy of an interested party in a situation where a purchaser at a judicial sale makes the required deposit and fails to pay the balance within thirty days. Crescent argues that in spite of the fact that no deposit was required herein the second part of Section B referring to a thirty day payment applies. We disagree. Section A provides for a procedure to be followed by a seizing creditor in the case of a sale where full payment is required at the time of sale and the purchaser fails to make the payment. Crescent is not the seizing creditor. Under no part of R.S. 13:4360 is Crescent allowed to demand a second sale.
Crescent's final argument is that the trial court misinterpreted the provisions of LSA-R.S. 9:4819(A)(3) which provide:

* * * * * *
"(3) In any event, if an affidavit, duly signed by an architect, a licensed civil engineer or registered land surveyor, before a notary public, has been filed in the office of the clerk and recorder of the parish in which the property is located or in the case of Orleans Parish, in the mortgage office thereof, which affidavit certifies that he has inspected the job site on a certain date and at a certain time and that no work has begun or material furnished to the building site, either on new construction or on the improvement, repair or reconstruction of existing construction; and such affidavit is filed immediately prior to the filing of a bona fide mortgage or bona fide vendor's lien, or within two business days thereafter, then any lender, including banks, savings and loan associations, life insurance companies, credit unions or other institutional lenders, and other interested parties may rely on the facts recited in said affidavit and shall maintain any and all privileges to and priority over other liens and claims as conferred by Title 9, and particularly, 9:4801, 9:4812, and 9:4813. The filing of such an affidavit will in no wise prejudice the rights of the furnishers of labor or material to file and perfect liens to which they may be entitled, but if materials have been furnished after the affidavit of the engineer, architect or surveyor has been filed, then a materialmen's lien is subordinated to the bona fide mortgage or vendor's lien."
* * * * * *
Crescent argues that the last sentence of paragraph (A)(3) states that a materialmen's lien is only subordinated to a bona fide mortgage where the materials have been delivered after the affidavit has been filed. Intervenor argues, therefore, that the trial court erred in not allowing him to present evidence to show that the work was begun and materials were delivered prior to the affidavit. There is a proffer to that effect in the record. Crescent also denies that a right of action against the inspector for negligently or willfully filing a false affidavit is a meaningful remedy.
*363 FNBC's position is that the provisions of La.R.S. 9:4819(A)(3) allow a lender to rely on the affidavit of "no work" to assure him of security in his lending position from the inception of the transaction. Plaintiff contends that the last sentence of the paragraph is merely directory and its purpose is to provide that liens may be filed and perfected even after an affidavit is filed.
LSA-R.S. 9:4819(A)(3) is a relatively new statute and there has not been a lot of interpretation of it. The implication from a recent case, Louisiana National Bank v. Triple R. Contractors, Inc., 334 So.2d 516 (La. App. 1 Cir. 1976) writ granted La., 338 So.2d 287 is that a lending institution may rely on the engineer's affidavit unless they know or should have known of the insufficiency of the affidavit. In that case an apartment complex was being built in two phases. A licensed engineer surveyed only a portion of the land which was being mortgaged. In that case, the mortgagee was on notice that the entire mortgaged area had not been inspected and approved. In this case, the entire Plot A-3 was surveyed and approved by a licensed surveyor. Therefore, FNBC could rely on the affidavit. The district court was correct in not allowing Crescent to introduce evidence to contradict the "no work" affidavit. The language of LSA-R.S. 9:4819(A)(3) which provides for reliance by the lender on the "no work" affidavit would be meaningless, and, we think, the legislative intent and object of the statute frustrated if a materialman is permitted to controvert the "no work" affidavit and thereby subordinate the lender's mortgage to his lien. Materialmen are, we think, adequately protected by LSAR.S. 9:4819(C) which provides:

* * * * * *
"(C) Any civil engineer, architect or registered land surveyor, who shall negligently or wilfully file a false affidavit under this section or who fails to record an affidavit when required to do so, shall be liable to any materialmen or laborers who may have otherwise been entitled to a lien or privilege hereunder."
For the foregoing reasons the judgment of the district court is affirmed.
AFFIRMED.