646 So.2d 885 (1994)
LOUISIANA PADDLEWHEELS
v.
The LOUISIANA RIVERBOAT GAMING COMMISSION.
No. 94-CA-2015.
Supreme Court of Louisiana.
November 30, 1994.
*886 Jenifer Schaye, James C. Dixon, Baton Rouge, John F. DeRosier, Lake Charles, Julie Collins, Thomas A. Warner, III, Baton Rouge, Hon. Robert R. Bryant, Gernine M. Mailhes, Lake Charles, for applicant.
Richard A. Chozen, Lake Charles, Camille F. Gravel, Jr., Alexandria, Paul R. Baier, Baton Rouge, for respondent.
LEMMON, Justice.[*]
Louisiana Paddlewheels, an applicant for a riverboat gaming license, filed this action for a declaratory judgment to determine the constitutionality of La.Rev.Stat. 4:537 and 4:537.1. These statutes, among other things, prohibit the issuance of a license for a riverboat gambling operation in Calcasieu and Ouachita Parishes without the approval of a majority of the electors at a referendum election called by the governing authority under the statute.
The matter is now before this court on direct appeal under La. Const. art. V, § 5(D) after the trial judge granted summary judgment in favor of Louisiana Paddlewheels and declared the two statutes unconstitutional.

Facts
In 1991, the Legislature enacted La.Rev. Stat. 4:501-562, the Louisiana Riverboat Economic Development and Gaming Control Act, which became effective July 18, 1991. Section 503 of the Act authorized the conducting of riverboat gaming on designated rivers and waterways, including the Calcasieu River which flows through the City of Lake Charles in Calcasieu Parish. Section 525 limited to fifteen the number of licenses which may be issued to conduct gaming activities on riverboats. Section 552 C authorized an election in any parish or municipality, upon petition of twenty-five percent of the registered voters, to determine whether to prohibit the operation of a riverboat in the parish or municipality, but any election had *887 to be held on or before March 15, 1992. No such "local option" elections were held in Calcasieu or Ouachita Parishes.
In 1992, the Legislature amended Section 503 to add the lake, Lake Charles, to the list of designated rivers and waterways. There was no provision for a new period for holding a "local option" referendum.
In February 1993, Paddlewheels applied to the Louisiana Riverboat Gaming Commission for a certificate of preliminary approval to conduct riverboat gaming operations from a dock in Belle Chasse in Plaquemines Parish. There were forty-two other applications for certificates for various locations. The Commission approved fifteen applicants by June of 1993, but Paddlewheels' application was not one of those approved.
In 1993, the Legislature enacted La.Rev. Stat. 4:537 and 537.1, which became effective June 14, 1993 and are the subject of this litigation. Section 537 prohibited the issuance of a riverboat gaming license in the two parishes without approval of the voters in a referendum election. The act by its terms excluded applicants who received preliminary approval prior to June 5, 1993. Section 537.1 authorized the revoking of a riverboat gaming license in the two parishes after March 1, 1997 by majority vote of the electors.
In October 1993, Paddlewheels filed a petition to amend its application to change its proposed docking site to Calcasieu Parish. The Commission, which has neither approved nor rejected the amended application, was prohibited from issuing the license by La. Rev.Stat. 4:537 and by the statutory limitation on the number of licenses. Three days after filing its amended petition, Paddlewheels filed this declaratory judgment action seeking to have La.Rev.Stat. 4:537 and 4:537.1 declared unconstitutional.
As a basis for unconstitutionality, Paddlewheels asserted (1) that the statutes violate the prohibition of La. Const. art. III, § 12 against the Legislature's passing a local or special law for the holding and conducting of elections or for the regulation of labor and trade; (2) that the statutes were enacted without compliance with the notice requirements of La. Const. art. III, § 13; and (3) that the statutes deny Paddlewheels equal protection of the laws in violation of La. Const. art. I, § 3.[1]
Both parties filed motions for summary judgment, and the motions were tried on stipulated facts. The Commission argued that the statutes were not local or special laws because they were designed to afford to the voters in Calcasieu and Ouachita Parish the same "local option" rights that voters throughout the state had enjoyed under the original act, and because they addressed an issue of state-wide concern. The Commission further contended that the statutes did not violate equal protection because all persons who applied for riverboat gaming licenses in the two parishes after the effective date were treated equally.
The trial judge observed that the "sole thrust of La.Rev.Stat. 4:537 and 4:537.1 is the `holding and conducting of elections'" and that the statutes "provide a different type of local option election for Calcasieu and Ouachita parishes than that afforded to the remaining parishes in the state." She noted that the other sixty-two parishes are "excluded from conducting an election to authorize a particular and specific applicant."[2] The judge concluded that the statutes were therefore local or special laws for the holding and conducting of elections prohibited by La. Const. art. III, § 12. The judge further found that the statutes violated the equal protection guarantee of La. Const. art. I, § 3 because the laws did not affect equally all persons and interests similarly situated and because there was no rational basis for the *888 different treatment afforded to the voters in Calcasieu and Ouachita parishes. The trial court therefore granted summary judgment in Paddlewheels' favor.
Hence this appeal by the Commission.

No Right of Action
The Commission filed exceptions of no right of action, no cause of action and prematurity. Only the exception of no right of action merits thorough analysis.
An action can only be brought by a person having a real and actual interest which he asserts. La.Code Civ.Proc. art. 681. The exception of no right of action is designed to test whether the plaintiff has a real and actual interest in the action. La. Code Civ.Proc. art. 927(5). The function of the exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. Babineaux v. Pernie-Baily Drilling Co., 261 La. 1080, 262 So.2d 328 (1972). The exception of no right of action assumes that the petition states a valid cause of action for some person[3] and questions whether the plaintiff in the particular case has a legal interest in the subject matter of the litigation. A person can challenge the constitutionality of a statute only if the statute seriously affects his or her rights. City of Baton Rouge v. Norman, 290 So.2d 865 (La.1974).
The Commission contends that Paddlewheels has not shown any rights affected by the challenged statutes. The Commission argues that Paddlewheels lost any right it might have had to challenge the statutes when the Commission approved the statutorily-limited number of fifteen applicants. Prior to that time, the Commission further asserts, Paddlewheels' application was for a Plaquemines Parish berth and was not affected by the statute pertaining to Calcasieu Parish.
The district court overruled the exception on the basis that Paddlewheels has an interest peculiar to Paddlewheels and separate and distinct from the general public interest.
The issuance of preliminary approvals for the maximum number of fifteen riverboats did not shut off Paddlewheels' real and actual interest in challenging the statutes. While there is a present statutory limit of fifteen licenses, the statute is subject to amendment increasing the limit. Additionally, one or more of the present fifteen licensees may be required to give up its license because of revocation, financial problems or myriads of other reasons. If a license becomes available, present law prohibits consideration of Paddlewheels' application unless the voters approve the applicant. Paddlewheels also has an interest in not being subjected to a referendum election if its pending application is eventually approved. Paddlewheels has a further interest because it presumably has financial commitments for a location on the lake, in the form of an option or similar protective instrument, as part of its application for a riverboat gaming license to berth or use a docking facility on Lake Charles. Moreover, Paddlewheels has an interest in determining the validity of the statute in order to decide whether to move its application to another parish. It is not as if Paddlewheels had no pending application and merely had a general interest in the academic question of the statute's validity.
We conclude that since Paddlewheels has a pending application for a license to berth or use a docking facility on Lake Charles for riverboat gaming, it has a real and actual interest in challenging the statutory provisions which prohibit issuance of a license unless the governing authority calls a referendum election and effectively places Paddlewheels' fate in the hands of the voters.[4] Operation of the statute thus prevents *889 the Commission from even considering Paddlewheels' amended application in the event that a license becomes available.

Prohibited Local or Special Laws
La. Const. art. III, § 12 prohibits the Legislature from enacting local or special laws in certain circumstances. Local or special laws "[f]or the holding and conducting of elections, or fixing or changing the place of voting" and for "[r]egulating labor, trade, manufacturing, or agriculture" are specifically prohibited.[5]
The term "local or special" is used in contradistinction to the term "general." The prohibition is intended to reflect a policy decision that legislative resources and attention should be concentrated upon matters of general interest, and that purely local matters should be left to local governments. H. Alston Johnson III, Legislative Process, 36 La.L.Rev. 549 (1976).
The initial question in determining whether a law is "local or special" is whether "its operation is limited solely by its designation of certain parishes." State v. LaBauve, 359 So.2d 181, 183 (La.1978). The fact that La.Rev.Stat. 4:537 and 537.1 clearly limit their application to Calcasieu and Ouachita Parishes initially indicates that they are local or special laws.
Nevertheless, a law is not necessarily local or special simply because it is directed at specific localities. In Polk v. Edwards, 626 So.2d 1128, 1134 (La.1993), this court stated that "a statute is not a local or special law within the meaning of the constitutional provision if persons throughout the state are affected, or if it operates on a subject in which the people at large are interested, even though its application and immediate effect is restricted to a particular locality." The court noted that "[t]he real distinction between public or general laws and local or special laws is that the former affect the community as a whole, whether throughout the State or one of its subdivisions; and the latter affect private persons, private property, private or local interests." Id. at 1135.
In Polk, this court considered whether the statutes authorizing gaming were general laws or local or special laws. We concluded that the gaming laws were general laws because they were adopted for the benefit of the entire state and addressed matters of state-wide concern which the Legislature has the authority to regulate pursuant to its police power. We noted that the gaming laws were not local laws because their purpose was not to create an advantage for, or an advancement of, private or local interests or a particular political subdivision of the state.
In contrast, the entire thrust of Sections 537 and 537.1 is to create an election scheme that treats only Calcasieu and Ouachita Parishes in a special manner. The statutes advance the interests of two particular parishes and give them far greater autonomy and control with regard to riverboat gaming than is afforded to the remaining parishes of the state.
The election process provided in Section 537 effectively prohibits riverboat gaming in Calcasieu and Ouachita Parishes unless a majority of the voters approve the specific applicant. Even before March 15, 1992, no election concerning riverboat gaming could be held at all in the remaining parishes unless twenty-five percent of the registered voters petitioned for a referendum and then the vote would be to prohibit the operation of any riverboat in the parish. Additionally, that limited right in the remaining parishes *890 expired eight months after the adoption of the Act.
Section 537.1 also grants the voters in Calcasieu and Ouachita Parishes an ongoing right to control riverboat gaming in their area, a right which is not afforded to the voters in the remaining parishes. Pursuant to Section 537.1, the voters in Calcasieu and Ouachita Parishes have the right to oversee gaming operations in their communities in that fifteen percent of the voters can petition for an election in which the voters can decide whether current riverboat gaming operations should continue. If the voters disapprove of a specific riverboat operator, the statute mandates that the Riverboat Gaming Enforcement Division shall revoke the operator's license. If the voters in these two parishes wish to bar all riverboat gaming operations in their area, they can preclude all gaming operations by denying approval to all applicants.
Sections 537 and 537.1 afford special treatment to a particular locality by granting greater rights to the voters in Calcasieu and Ouachita Parishes than the Legislature has afforded to the voters in the remainder of the state. Although a number of parishes and municipalities throughout the state are directly affected by riverboat gaming on their waterways, only Calcasieu and Ouachita Parishes have been afforded the opportunity to exercise extensive and ongoing control over gaming activities in their localities.
We therefore conclude that the statutes create a classification with a significant difference between the class created and the class excluded, and there is no reasonable basis for designation of the favored class for separate treatment. The statutes therefore constitute local or special laws.
Nevertheless, the determination that a law is local or special does not end the inquiry because the constitution does not prohibit all local or special laws, but only those that concern certain enumerated topics.
The goal of the statutes at issue in this case is to provide for referendum elections concerning riverboat gaming operations (in the absence of which riverboat gaming is prohibited) and to set forth specific parameters for the holding of such elections (fixing the date for the referendum election, specifying detailed requirements for public notice, providing the exact language of the proposition, requiring compliance with the Election Code, providing for the percentage of voters who must petition under Section 537.1 to hold an election to revoke a licensee's license, and limiting elections concerning revocation to one election during a three-year period). La.Rev.Stat. 4:537 and 4:537.1 therefore undoubtedly address "the holding and conducting of elections" and fall within the constitutional constraints of La. Const. art. III, § 12(A)(1) which prohibits local and special laws for the holding and conducting of elections.

Decree
The judgment of the trial court declaring La.Rev.Stat. 4:537 and 4:537.1 unconstitutional is affirmed.
WATSON, J., joins the opinion but adds that the law obviously denies equal protection of the law under the constitution. See Nomey v. Louisiana, 315 So.2d 709 (La., 1975).
NOTES
[*] Judge Felicia Toney Williams, Court of Appeal, Second Circuit, participating as Associate Justice Pro Tempore, effective September 1, 1994.

Dennis, J., not on panel. Rule IV, Part 2, § 3.
[1] Paddlewheels' equal protection argument was based on the fact that another applicant, Players Lake Charles, Inc., was not subject to La.Rev. Stat. 4:537's requirement for voter approval because it had received preliminary approval to operate a gaming boat on Lake Charles in Calcasieu Parish prior to June 5, 1993.
[2] The result of this statutory scheme is that the voters in Calcasieu and Ouachita parishes have an ongoing right to express their opinion regarding the desirability of riverboat gaming operations in their parishes and to prohibit such gaming operations entirely or to limit the gaming activities to licensees who have the voters' approval. The same right is not extended to the voters in any other parish in this state.
[3] The function of the exception of no cause of action is to question whether the law extends a remedy to anyone under the factual allegations of the petition. Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (1972). No one disputes that the law extends to someone the right to challenge the constitutionality of these statutes. The Commission by this exception also argues that there is no justiciable controversy, but this argument is essentially directed to Paddlewheels' real and actual interest in the action, the same argument treated above.
[4] The Commission also filed an exception of prematurity. First, Paddlewheels did not have to exhaust any administrative remedy in order to challenge the constitutionality of a statute under which it was adversely affected, and only the district court can declare a statute unconstitutional. Second, the Commission's argument that Paddlewheels' action is premature because Paddlewheels has not been denied a license to operate in Calcasieu Parish begs the question; it is the challenged statute which unambiguously prohibits the issuance of a license if and when one becomes available, unless the applicant receives voter approval.
[5] La. Const. art. III, § 12(A)(1) provides:

(A) Prohibitions. Except as otherwise provided in this constitution, the legislature shall not pass a local or special law:
(1) For the holding and conducting of elections, or fixing or changing the place of voting.
(6) Regulating labor, trade, manufacturing, or agriculture; fixing the rate of interest.