JiPLOTKIN, Judge.
Plaintiff Livingston Downs Racing Association, Inc. appeals a trial court judgment dismissing its petition for judicial review of Louisiana State Racing Commission decision approving requests made by Evangeline Downs, L.C. We affirm.
Facts[1]
In 1987, the following five primary racing facilities conducted horse racing in Louisiana: Delta Downs, Evangeline Downs, the Fairgrounds Corporation, Jefferson Downs, and Louisiana Downs. Each of these racing facilities owned race tracks. Two other racing associations operated in Louisiana, but were not considered primary licensees: Red River Downs, which operated pursuant to a lease at Louisiana Downs, and Lake front Turf Club, which operated at Jefferson Downs. A “primary licensee” was defined by LSA-R.S. 4:211(7) as a “licensed association conducting the majority of race days at a pari-mutuel facility.” A “pari-mutuel facility” was de *645 fined as “any pari-mutuel race track conducting race-meetings during the 1986-87 racing season and licensed prior to [June 30,1987].” LSA-R.S. 4:211(6). The 1987 legislative session enacted LSA-R.S. 214, which allowed offtrack wagering in Louisiana only at parimutuel facilities, as defined above.
In 1992, Jefferson Downs closed. As a result, Livingston Downs Racing Association applied to the Racing Commission for a permit to conduct live horse racing in Jefferson Parish, intending to apply for the racing dates left open by the closing of Jefferson Downs. At the same time, Livingston Downs applied for a license to conduct and operate an offtrack wagering facility, which request was later withdrawn before it was considered by the Commission. Livingston Downs’ application for a license to conduct live horse racing was approved by the Commission on May 27, 1993. However, Livingston Downs has apparently never offered any horse races nor opened a racing facility.
Thereafter, on October 19, 1993, Livingston Downs filed suit seeking declaratory and injunctive relief and requesting the court to declare LSA-R.S. 4:211(5), 4:211(7), and 4:214(A)(1) unconstitutional because it denied Livingston Downs equal protection under the law. By amended petition, Livingston Downs also sought injunctive relief and a declaratory judgment aimed at LSA-R.S. 27:304, relative to the limits on the amount of payouts of video poker machines. The suit was eventually decided by the Louisiana Supreme Court, which upheld the constitutionality of the challenged provisions, effectively denying Livingston Downs any right to seek a license to conduct offtrack wagering.
¡¡A dispute later arose between Livingston Downs and the Racing Commission, which was resolved by virtue of a consent judgment in Civil District Court No. 92-20961, a consolidated case to the case currently on appeal. The consent decree provided, in pertinent part, as follows:
3.IT IS FURTHER ORDERED, ADJUDGED AND DECREED that during the pendency of the Stay of these proceedings the ten year license issued to Livingston Downs Racing Association, Inc. on May 27, 1993 and licenses to conduct live race meetings previously issued to Livingston Downs Racing Association, Inc. by the Louisiana State Racing Commission are suspended, and the Commission shall not, except as hereinafter provided in this Consent Judgment, be required to consider the plaintiff as a licensed association. ...
4. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Commission shall consider an application to be filed by Livingston Downs Racing Association, Inc. for a ten (10) year license to operate a racetrack on the property situated in Livingston Parish, which property is more fully described in the applications previously filed by Livingston Downs Racing Association, Inc. with the Commission, and for racing dates for a period not exceeding three racing years, all pursuant to La. R.S. 4:158(B), on or before October 31, 1998.
5. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that any dates for which Livingston Downs Racing Association, Inc. may apply to conduct a live race meeting shall be restricted as follows: (1) for thoroughbred racing: for the period after the traditional close of the Evangeline Downs live race meeting until the traditional opening of the Fair Grounds live race meeting, and (2) for quarterhorse racing: for the period of November through April. Provided however, nothing contained herein shall prevent the Commission from awarding to Livingston Downs Racing Association, Inc. other racing dates which may become available if such dates are requested by Livingston Downs Racing Association, Inc.
6. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that any application for permits or licenses to be issued to Livingston Downs Racing Association, Inc., which applications are filed on its behalf and shall conform to the provisions of La. R.S. 4:158 and 4:147(4)(a) through (g) and 147(5), shall include within the application binding, enforceable commitment letter(s) in an amount not less than TEN MILLION ($10,000,000) DOLLARS, which provides *646 for the funding of the ^construction of the racing facility, including a grandstand, a racing oval and a backside, on the timetable as set forth hereinafter.
(Emphasis added.) Thus, at the time of the hearing in the instant case, the Commission was not required to consider Livingston Downs a licensed association.
With that procedural background, we come to the facts giving rise to the instant controversy. On July 11, 1997, the Racing Association approved two requests submitted by Evangeline Downs, which was, at the time, a licensed race track situated in Lafayette Parish, also licensed under LSA-R.S. 4:214 to conduct offtrack wagering. At the time, Lafayette Parish had voted down offtrack wagering. In response, Evangeline Downs purchased property five miles north of its current location, in St. Landry Parish, in the hopes of moving the track to a parish which would allow offtrack wagering. Thus, Evangeline Downs sought necessary documents to cause referendum elections in the parish where it hopes to relocate.
Those requests approved by the Racing Commission can be described as follows: (1) a request for a conditional, modified license to relocate the race track to St. Landry parish for the purpose of causing a referendum election to approve horse racing in that parish, and (2) a request for notice to St. Landry Parish that Evangeline Downs has made application to operate an off-track wagering facility in that parish, also for the purpose of causing a referendum election. The only effect of the Racing Commission’s action is to allow Evangeline Downs to cause referendum elections in the parish where it hopes to relocate.
(¡Five days later, on July 16, 1997, Livingston Downs filed a petition for judicial review of the Commission’s rulings approving the two requests. Livingston Downs described its contentions as follows in its brief to this court:
1. The purported license issued does not meet the requirements of LSA-R.S. 4:214 necessary to call a referendum on the issue of off-track wagering.
2. The purported license does not meet the criteria for the issuance of a license to conduct race meetings required under the provisions of LSA-R.S. 4:181, which is governed by the provisions of LSA-R.S. 4:147, 4:158, and 4:159.
3. The request submitted by [Evangeline Downs] does not meet the criteria for the issuance of a license as required in LSA-R.S. 27:381 by failing to meet the requirements set forth in LSA-R.S. 4:147, 4:158 and 4:181.
4. The proposed track in St. Landry Parish does not meet the definition of pari-mutuel facility found in LSA-R.S. 4:211(5) and therefore the LSRC was without legal authority to transfer live racing dates to it under the provisions of LSA-R.S. 4:214(B)(2).
5. LSA-R.S. 4:214(B)(2) does not authorize transfer of any license, said transfer being specifically and statutorily prohibited by LSA-R.S. 4:158.,:
6. The [Racing Commission’s] ruling violates [Livingston Down’s] constitutional rights of due process and equal protection and the provisions of LSA-R.S. 4:141, et seq., LSA-R.S. 49:951, et seq. and LSA-R.S. 27:381.
7. [Livingston Downs] is aggrieved by the [Racing Commission’s] ruling in that it may affect [Livingston Downs’] rights under LSA-R.S. 4:147(a) and R.S. 4:214(A)(3).
In response to the petition, the Racing Commission filed peremptory exceptions of no right and no cause of action, a declinatory exception of lis pendens, and a dilatory exception of prematurity. The trial court granted the exceptions, and dismissed the petition for judicial review, without any explanation concerning the merits of the individual exceptions.

kException of no cause of action

Although the procedural history and issues are complicated in this case, the fact remains that the only effect of Commission’s rulings are to issue documents allowing Evangeline Downs to cause a referendum election in St. Landry Parish. However, review of the pleadings, in light of the applicable Louisiana state law, reveals that the trial court correct *647 ly dismissed the petition for judicial review on the exception of no cause of action.
The applicable law on this issue has recently been summarized by the Louisiana Supreme Court in Louisiana Paddlewheels v. Louisiana Riverboat Gaming Commission, 94-2015 (La.11/30/94), 646 So.2d 885, a case cited by Livingston Downs, as follows:
An action can only be brought by a person having a real and actual interest which he asserts. La.Code Civ.Proc. art. 681. The exception of no right of action is designed to test whether the plaintiff has a real and actual interest in the action. La. Code Civ.Proc. art. 927(5). The function of the exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (1972). The exception of no right of action assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case has a legal interest in the subject matter of the litigation. A person can challenge the constitutionality of a statute only if the statute seriously affects his or her rights. City of Baton Rouge v. Norman, 290 So.2d 865 (La.1974).
(Footnote omitted.)
In Louisiana Paddlewheels, the Supreme Court found that a riverboat company with a pending application for a license had a real and actual interest in challenging the constitutionality of statutory provisions prohibiting the issuance of a license in the absence of a referendum election because of the possibility that the law might change at some future time. That case is factually distinguishable from (/the instant case in the following ways: (1) Livingston Downs does not challenge the constitutionality of any provision in this case, but is challenging a specific action of the Racing Commission, which has no impact on Livingston Downs at the present time, and only speculative future impact; and (2) Livingston Downs did not have a pending application which was affected by the Racing Commission’s ruling. The Commission’s ruling simply provided the necessary documentation to allow Evangeline Downs to petition St. Landry Parish officials to cause a referendum election. The Racing Commission has not issued a license allowing Evangeline Downs to conduct live horse racing in St. Landry Parish, nor has it transferred any live racing dates to the proposed St. Landry Parish location.
The Commission’s actions have absolutely no effect on Livingston Downs, which is not considered a licensing racing association, by the express terms of the consent agreement. Moreover, even if Livingston Downs were a licensed racing association, it is prohibited by law from conducting offtrack wagering. Thus, Livingston Downs has no standing to contest the Racing Commission’s actions; thus, the trial court correctly dismissed the petition on an exception of no cause of action. Conclusion
Because we have found that the trial court correctly dismissed Livingston Downs’ petition for judicial review on the exception of no cause of action, we pretermit discussion of the other exceptions, but reserve to Livingston Downs the bright to raise the other exceptions in the future. The trial court judgment is hereby affirmed. All costs are assessed to Livingston Downs.
AFFIRMED.

. Some of the pertinent facts are taken from the Louisiana Supreme Court's decision in Livingston Downs Racing Association, Inc. v. State of Louisiana, 96-2890 (La.12/2/978), 705 So.2d 149.