h STEWART, J.
Gibsland Bank and Trust Company (“GBT”), appeals a judgment sustaining an *1142 exception of no cause of action and dismissing with prejudice its intervention filed in response to an executory proceeding instituted by Nitro Gaming, Inc., (“Ni-tro”). At issue is whether a seizing creditor who purchases property at a sheriffs sale is required to pay the full amount of the bid when a superior creditor intervenes after the sale but prior to distribution of the proceeds. The trial court concluded that the matter is governed by La. C.C.P. art. 2374, which provides for payment of “only that portion of the sales price which exceeds the amount of the superior security interest, mortgage, lien, or privilege.” We agree and affirm the trial court’s judgment.
FACTS
On March 21, 2001, Nitro obtained through executory process a writ of seizure and sale ordering the sheriff of Webster Parish to seize and sell three tracts of land located in Webster Parish. The exec-utory proceeding was based on a mortgage for future advances executed by Entercept Services, Inc., (“Entercept”), and a promissory note for $198,800,87 executed by En-tercept and Entercept’s president, Marlen Randal Estep, individually. Both the mortgage and note were dated June 29, 2000. The petition for executory process alleged the unpaid balance on the promissory note to be $190,597.97. The property was seized and a sheriffs sale was held on June 13, 2001. Nitro, the seizing creditor, was the high bidder at $370,000.
LThe custom of the Webster Parish sheriffs department when conducting a sheriffs sale was to collect from the purchaser an amount sufficient to pay amounts owed any superior mortgage holder. In this instance, a mortgage superior to that of the seizing creditor, Nitro, was held by GBT. This superior mortgage was reflected in the mortgage certificate issued by the Webster Parish Clerk of Court’s office. A collateral mortgage note for $150,000 and a collateral mortgage had been executed by Johnny Michael McGee on January 8, 1999 and filed January 20, 1999. Together the collateral mortgage and note secured a promissory noted dated May 30, 2000, for $143,023.62, executed by McGee and assumed by Entercept through an act of sale and assumption dated June 29, 2000. GBT had received prior notice of the sale from Nitro via certified mail with return receipt, proof of which was filed into the record, and had provided the sheriffs department with a final pay-off figure of $138,702.41 as of June 8, 2001.
After the sheriffs sale, Nitro, the successful bidder, was asked to pay a total price of $150,496.81, an amount sufficient to cover GBT’s superior mortgage and the costs of the sale. Relying on La. C.C.P. art. 2374, Nitro refused to pay off the first mortgage. The sheriffs department sought the advice of legal counsel and finally agree to accept from Nitro only the costs of the sale totaling $14,306. After accepting payment of the costs, the sheriffs department issued the sheriffs sale deed on June 28, 2001. The deed specifically provided that the property was sold subject to all superior mortgages.
|3In the meantime, after learning that Nitro would not pay off the first mortgage, GBT filed a petition for intervention on June 20, 2001, prior to disbursement of the proceeds of the sale. GBT correctly alleged that both the record and the mortgage certificate prepared by the Webster Parish Clerk of Court’s Office established it to be the holder of a mortgage superior to that of Nitro. GBT alleged that it was entitled to a judgment ordering the sheriff to withhold proceeds from the sale sufficient to satisfy its claim as the superior mortgage holder. The trial court signed an order that same day, June 20, 2001, *1143 directing the sheriff to hold a portion of the proceeds sufficient to satisfy GBT’s claim and set a date for a rule to show cause why Nitro should not pay the full amount of its bid to the sheriffs department and why the sheriff should not then pay GBT the full amount of its claim from the proceeds. However, as noted previously, the sheriff collected only the costs of the sale from Nitro.
In response to GBT’s intervention, Nitro filed a number of exceptions, one of which was the exception of no cause of action which is at issue in this appeal. After a short hearing on the exceptions, the trial court sustained the exception of no cause of action and rendered judgment dismissing GBT’s intervention.. The trial court found La. C.C.P. art. 2374 to be applicable and further found that GBT’s rights as the superior mortgage holder were protected. This appeal by GBT followed.
DISCUSSION
At issue is whether the trial court erred in sustaining Nitro’s exception of no cause of action and in dismissing GBT’s intervention filed [4in the executory proceeding instituted by Nitro. The function of the peremptory exception of np cause of action is to question whether the law provides a remedy to anyone under the factual allegations of the petition. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Commission, 94-2015 (La.11/30/94), 646 So.2d 885. The supreme court explained the exception of no cause of action in City of New Orleans v. Board of Directors of Louisiana State Museum, 98-1170 (La.3/2/99), 739 So.2d 748, 755-756 as follows:
The purpose of the peremptory exception of no cause of action is to determine the sufficiency in law of the petition. The burden of showing that the plaintiff has stated no cause of action is upon the exceptor. The public policy behind the burden is to afford the party his day in court to present his evidence. The exception is triable on the face of the papers, and for the purpose of determining the issues raised by the exception, the court'must presume that all well-pleaded facts in the petition are true. All reasonable inferences are made in favor of the nonmoving party in determining whether the law affords a remedy to the plaintiff. A court of appeal reviews de novo a lower court’s ruling sustaining an exception of no cause of action because the exception raises a question of law and because the lower court’s decision is generally based only on the sufficiency of the petition. The question is whether, in the light most favorable to the plaintiff, the petition states any valid cause of action for relief.
(Citations omitted; emphasis added.)
GBT argues that the trial court erred in sustaining Nitro’s exception of no cause of action because it relied solely on La. C.C.P. art. 2374 while ignoring La.C.C.P. arts. 1092, 2299,- 2643, and 2375, which GBT asserts provide for .intervention and relief as prayed for in its petition. Under La. C.C.P. art. 2643, a “third person claiming a mortgage, security interest, or privilege on the property seized in an executory proceeding may assert his right to share in the distribution of the proceeds of the sale of the property |5by intervention, as provided in Article 1092.” La. C.C.P. art, 1092 provides that a third person who claims a mortgage on the entire property seized, whether superior or inferior to that of the seizing creditor, may file an intervention any time prior to the distribution by the sheriff of the proceeds of the sale of the seized property. Article 1092 further provides that “the court shall order the sheriff to hold such proceeds subject to its *1144 further orders.” Both of these articles provide for the intervention of a third party into an executory proceeding, but neither article provides for specific relief other than ordering the sheriff to withhold proceeds pending further orders. GBT refers to La. C.C.P. art. 2299, an article included in Chapter 1 of Title II of Book IV pertaining to writs of fieri facias and money judgments, as requiring the sheriff to hold proceeds sufficient to satisfy the claim of an intervenor who asserts a privilege on the property superior to that of the seizing creditor. However, Article 2299 is not included among those articles listed in La. C.C.P. art. 2724 relating to the sale of property under a writ of fieri facias which shall also be applied to the sale of property under the writ of seizure and sale granted in an executory proceeding.
Nor does La. C.C.P. art. 2375 provide GBT with relief as that article provides for the situation where there are creditors with liens inferior to that of the seizing creditor. First National Bank of Commerce v. Watergate, Inc., 343 So.2d 360 (La.App. 4th Cir.1977), writ denied, 345 So.2d 55 (La.1977). Article 2375 states that the “purchaser is liable for nothing beyond the purchase price” and “shall pay the full purchase price to the sheriff, despite the existence of a mortgage, lien, or privilege on the property |fiinferior to that of the seizing creditor.” This article is intended to protect the purchaser from the claims of inferior lien holders, to provide the purchaser with immediate clear title to the property, and along with La. C.C.P. arts. 2376 and 2377, to shift the burden of dealing with inferior claimants to the sheriff. First Federal Savings and Loan Assoc. of Winnfield v. Blake, 465 So.2d 914 (La.App. 2d Cir.1985), writ denied, 469 So.2d 984 (La.1985). Accordingly, La. C.C.P. art. 2375 does not address the respective rights between the seizing creditor who purchases the property and the holder of a superior mortgage, lien, or privilege.
In sustaining Nitro’s exception of no cause of action, the trial court relied upon La. C.C.P. art. 2374, which provides as follows:
If there is a security interest, mortgage, lien, or privilege on the property superior to that of the seizing creditor, the purchaser shall pay to the sheriff only that portion of the sale price which exceeds the amount of the superior security interest, mortgage, lien, or privilege.
This article addresses the situation at issue in this instance. GBT has a mortgage on the property seized and sold that is superi- or to that of Nitro, the seizing creditor. Nitro, who was also the purchaser at the sheriffs sale, is required to pay only the portion of the sales price exceeding the amount of the superior security interest. Accordingly, Nitro was authorized under La. C.C.P. art. 2374 to withhold the amount of GBT’s superior mortgage rather than paying it to the sheriff.
In Barnard v. Barnard, 391 So.2d 939 (La.App. 2d Cir.1980), the court refused to set aside a judicial sale under a writ of fieri facias for the reasons that the purchaser failed to pay off a superior mortgage and failed to pay the full amount of the bid to the sheriff, but the court did declare the Lsale a nullity because the bid was not for cash and not in an amount sufficient to satisfy the superior mortgage. In reaching its decision, the court explained that while La. C.C.P. art. 2374 does not require the purchaser at a sheriffs sale to pay the sheriff the portion of the sales price required to satisfy the superior claim, the purchaser is still required to bid in cash an amount sufficient to pay all costs and superior claims. The court further recognized the obligation that a purchaser at a sheriffs sale may thereaf *1145 ter have to pay the note, in accordance with its terms, on the superior mortgage against the property sold at the sale.
In the case sub judice, there is no dispute regarding the sufficiency of Nitro’s bid. As required by La. C.C.P. art. 2337, the price offered by Nitro was sufficient to discharge the costs of the sale and GBT’s superior mortgage. The property was sold subject to GBT’s superior mortgage as provided in La. C.C.P. art. 2335, which states that the “property is to be sold for cash subject to any security interest, mortgage, lien, or privilege thereon superior to that of the seizing creditor.” GBT had prior notice of the sale. Its interests as the superior mortgage holder were recognized and adequately protected by the framework provided in the Code of Civil Procedure as explained in Acres, Inc. v. New Orleans Mortgage Company, Inc., 347 So.2d 334, 335 (La.App. 4th Cir.1977), citing Fortier v. Fortier, 200 So.2d 901, 906 (La.App. 4th Cir.1967), writ refused, 251 La. 59, 202 So.2d 661 (1967):
In judicial sales in Louisiana the sheriff shall announce that the property is to be sold for cash subject to any mortgage, lien, or privilege thereon superior to that of the seizing creditor. C.C.P. 2335. If there is a mortgage, lien or privilege on the property superior to Isthat of the seizing creditor, the purchaser shall pay to the sheriff only that portion of the sale price which exceeds the amount of the superior mortgage, lien, or privilege. C.C.P. art. 2374. Said articles accord with articles 679 and 683 of the late Code of Practice. Our law requires that at a judicial sale the purchaser shall bid for the full value of the property with the right to retain in his hands out of said price sufficient money to pay mortgages, liens, and privileges superior to that of the seizing creditor ... it becomes incumbent upon the adjudicatee to pay up superior mortgages, liens and privileges in order to perfect an unencumbered title to the property.
See also Pitts v. Mason, 418 So.2d 27 (La.App. 3d Cir.1982), writ denied, 422 So.2d 423 (La.1982).
Nitro purchased the property at the sheriffs sale subject to GBT’s superior mortgage. While Nitro is now responsible for satisfying GBT’s superior claim, it was not required under the executory process framework to pay the sheriff the amount of the superior claim. Accordingly, GBT cannot collect from the sheriff what is not required to be paid to the sheriff by the purchaser. Should Nitro fail to satisfy GBT’s claim, then GBT is protected by La. C.C.P. art. 2378 which provides:
When the purchaser fails to pay a security interest or mortgage superior to the security interest, mortgage, lien, or privilege of the seizing creditor, the superior security interest or mortgage may be enforced under any of the applicable provisions of Articles 3721 through 3743, or as otherwise provided under applicable law.
While La. C.C.P. arts. 1092 and 2643 appear in conflict La. C.C.P. art. 2374 and the framework referred to above, we believe that the intervention prior to disbursement of the proceeds allows for a superior creditor whose claim was not recognized prior to the sale and in the conduct of the sale to intervene in the proceeding. The superior creditor can then seek to have his claim recognized and to either challenge the seizing creditor for the proceeds or have the sale set aside. However, where as in |flthis instance the claim of the superior creditor was recognized in the sale proceedings, there is no need for intervention because the rights and interests of the superior creditor are protected as discussed above. This frame *1146 work also protects the purchaser who purchases property knowing that it is encumbered by a superior claim. If there is a security interest, mortgage, privilege, or lien on the property superior to that of the seizing creditor, the purchaser knows that only the portion of the sales price exceeding the superior claim will have to be paid to the sheriff. Thus, at the time of adjudication, the purchaser knows what cash must be on hand to satisfy the bid. The purchaser also knows that he is ultimately responsible for satisfying the superior claim and that the superior claim holder can assert its own rights under La. C.C.P. art. 2378.
Because GBT had prior notice of the sale and because GBT’s superior mortgage was recognized, we find that GBT’s intervention fails to state a cause of action for payment of its mortgage from the proceeds of the sale. Nitro was entitled to pay only that portion of the sale price exceeding the amount of the superior mortgage as provided in La. C.C.P. art. 2374. Therefore, we affirm the trial court’s judgment sustaining Nitro’s peremptory exception of no cause of action and dismissing GBT’s intervention with prejudice.
CONCLUSION
For the reasons mentioned, the judgment of the trial court is affirmed at appellant’s cost.
AFFIRMED.