902 So.2d 529 (2005)
Robert J. MONROE and Pat Tesson, as Members of Baron One, L.L.C.
v.
BARON ONE, L.L.C., Baron Oil & Gas, Inc., Murray & Associates, A Professional Architectural Engineering Corporation, Wilfred G. Gallardo, Sr., Paul Murray, Jr., Tiffeny Gallardo, and Stacy S. Murray.
No. 04-CA-1392.
Court of Appeal of Louisiana, Fifth Circuit.
April 26, 2005.
*530 L. Eades Hogue, Stephen R. Remsberg, John P. Page, New Orleans, LA and Leon C. Vial, III, Hahnville, LA, for Plaintiff/Appellant.
Herman C. Hoffmann, Jr., John F. Shreves, Simon, Peragine, Smith & Redfearn, New Orleans, LA, for Defendant/Appellee.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS and SUSAN M. CHEHARDY.
MARION F. EDWARDS, Judge.

FACTS AND PROCEDURAL HISTORY
In 1996, Baron Oil & Gas, a Louisiana corporation, was formed for the purpose of acquiring a distributorship for British Petroleum ("BP") fuel and other products in Louisiana and Mississippi. In December of 1996, Baron Oil & Gas moved forward *531 with its goal of building convenience stores to accommodate its BP distributorship, acquiring a location for its first store in Mandeville, Louisiana. In addition to a loan from MetroBank that was secured by a mortgage on the Mandeville property, Baron Oil directors Billy Gallardo and Joey Murray met with potential investors to acquire needed funding for the proposed Mandeville store, as well as for several other prospective Baron Oil owned stores.
Plaintiff, Pat Tesson, who had a history of business dealings with Murray, agreed to become a partner in Baron Oil's convenience store chain. Tesson further brought in Robert Monroe, executor of the Estate of J. Edgar Monroe, as a second investor in the project. Collectively, Tesson and Monroe agreed to provide financing for the Mandeville BP store, and for three additional stores, in the amount of $250,000.00 per location. Tesson and Monroe's loan would be secured by a second mortgage on each respective project. It was stipulated that an additional $3 million in financing to complete the projects would be obtained from commercial lenders.
In April of 1997, Robert Monroe, Patrick Tesson, Stacy Murray, Tiffeny Gallardo, Wilfred G. Gallardo, Sr., and Paul Murray, Jr. formed Baron One, L.L.C., for the purpose of facilitating the finance and construction of the BP convenience stores. In regard to Monroe and Tesson's contribution, it was agreed that their loans would be made to Baron One, L.L.C., which would in turn transfer the funds to Baron Oil & Gas, the owner of the store sites. Tesson and Monroe did, in fact, complete the transfer of $250,000.00 to Baron One, L.L.C., which carried a first installment date of August 11, 1997 as secured by promissory notes in favor of both Monroe and Tesson along with personal guarantees executed by other members of Baron One. Upon completion of a store, Baron Oil & Gas was to then transfer title to Baron One, L.L.C.
The projected opening date of the first store was to be July 4, 1997. Due to construction delays, however, this deadline was missed. The project also required an unexpected expense for leasing an adjacent parcel of land for traffic access purposes at a cost of $900.00 per month. Ultimately, Baron One, L.L.C. failed to make the first installment under the promissory note.
In October of 1997, Tesson and Monroe filed suit in the Twenty-Fourth Judicial District Court for the Parish of Jefferson for collection of the note from Baron One, L.L.C.[1] Then, in November of 1998, Monroe and Tesson filed a derivative action in the Twenty-Ninth Judicial District Court for the Parish of St. Charles against Stacy Murray, Tiffeny Gallardo, Wilfred G. Gallardo, Sr., Paul Murray, Jr., Baron One, L.L.C., and Murray & Associates, an architectural engineering corporation retained to design the Mandeville store. Defendants, in turn, filed a reconventional demand against Tesson and Monroe.
A judge trial on the merits was heard on May 3 and 4, 2004. Upon conclusion of the trial, the court dismissed the main demand and ruled in favor of defendants/plaintiffs in reconvention, awarding them $148,093.21, together with legal interest. Monroe and Tesson timely filed the present appeal.

LAW AND ANALYSIS
On appeal, Tesson and Monroe do not challenge the dismissal of their demand, *532 but raise three assignments of error regarding the reconventional demand: 1) The court erred in failing to uphold their exception of no right of action to the Reconventional Demand; 2) The court erred in awarding legal fees as damages; and, 3) The court employed an improper standard in weighing the evidence on liability.
Inasmuch as this appeal turns on factual determinations by the trial judge, we must review the record using the manifest error-clearly wrong standard of appellate review. That standard was recently reviewed by our Supreme Court in Cenac v. Public Access Water Rights Assn.:[2]
In civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard which precludes the setting aside of a trial court's finding of fact unless those findings are clearly wrong in light of the record reviewed in its entirety. Rosell v. ESCO, 549 So.2d 840 (La.1989). A reviewing court may not merely decide if it would have found the facts of the case differently, the reviewing court should affirm the trial court where the trial court judgment is not clearly wrong or manifestly erroneous. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099, 93-3110, 93-3112, p. 8 (La.7/5/94), 639 So.2d 216, 221.
By their first assignment, plaintiffs contend that the trial court erred in failing to uphold their exception of no right of action to the defendant's Reconventional Demand. The record shows that although they filed their exception prior to trial, the court held that it would instead refer the exception to the merits. Neither the record, nor the judgment, shows that plaintiffs' exception was specifically considered.
Plaintiffs Tesson and Monroe assert that "as mere shareholders, plaintiffs-in-reconvention had no right of action." Plaintiffs instead assert that at all times the reconventional and third-party demands were instead owned by Baron Oil and Gas. In support of their argument, plaintiffs first cite to the case of Red Simpson, Inc. v. Lewis,[3] in which the First Circuit held that a parent corporation of pledgee/holder of a promissory note had no right of action on note since its rights were derivative, and any losses sustained by it were indirect. Plaintiffs then cite to this Court's opinion in Sharkey's Reef v. Polit[4], in which we noted that a "shareholder or creditor is not the proper party plaintiff to bring an action on behalf of a corporation."[5]
In the reconventional demand, defendants asserted that Tesson and Monroe had breached their fiduciary duty to Baron One, L.L.C. and its members by failing to ensure that the Promissory Note was paid in a timely fashion or to take other measures to avoid a default. Defendants also asserted claims of breach of contract, and acts in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law.
As noted by the court in the case of Sun Drilling Products Corp. v. Rayborn:[6]
If the breach of fiduciary duty causes a direct loss to the shareholder or causes damage affecting the shareholder *533 personally, a shareholder may have the right to pursue a claim individually for breach of fiduciary duty to the corporation under LSA-R.S. 12:91. However, in situations where the alleged loss to the individual shareholder is the same loss that would be suffered by other shareholders, the loss is considered to be indirect. Where the shareholder, but not the corporation, suffers a loss, that loss is considered a direct loss to the shareholder, and the shareholder may have a right to sue individually. Lawly Brooke Burns Trust [v. RKR, Inc., 96-1231 (La.App. 1 Cir. 3/27/97), 691 So.2d 1349], supra at 1353.
In regard to causes of action pursuant to the Unfair Trade Practices and Consumer Protection Law, set forth in La. R.S. 51:1401, et seq., Louisiana Revised Statutes 51:1409(A) confers a private right of action on "[a]ny person who suffers any ascertainable loss of money or moveable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by R.S. 51:1405." [Emphasis added.]
Similarly, courts have provided that shareholders can have a personal cause of action for breach of contract under circumstances where the shareholder has suffered a personal loss.[7]
The essential function of an exception of no right of action is to test whether the plaintiff has a real and actual interest in the action.[8] Its purpose is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. It assumes that the petition states a valid cause of action and questions whether the plaintiff in the particular case has a legal interest in the matter of the litigation.[9] The exception of no right of action relates solely to the person of the plaintiff. It cannot be used to determine whether a defendant can stand in judgment, nor can it be used to urge that the plaintiff has no right of action because there is a valid defense.[10]
In the present case, after a review of the reconventional demand, we find that defendants/plaintiffs in reconvention did, in fact, sufficiently state a cause of action pertaining to a legal interest in the matter of the litigation. Accordingly, we find this assignment to be without merit.
In their third assignment of error, Tesson and Monroe argue that the trial court erred in employing an improper standard in weighing the evidence on liability.
In its Reasons For Judgment, the trial court stated that it awarded damages to the plaintiffs-in-reconvention based on what it perceived to be a breach of fiduciary on the part of Tesson and Monroe in calling in the promissory note and personal guarantees executed by the plaintiffs in reconvention.
The record reflects that both the promissory note and personal guarantees were, as Tesson and Monroe suggest, valid and fully enforceable on the faces of the documents. The record shows that plaintiffs in reconvention had never disputed this fact, but instead asserted in their reconventional demand that Tesson and Monroe breached a fiduciary duty in enforcing *534 their respective interests. Tesson and Monroe argue that the trial court, in rendering its judgment, failed to take into account that although they were, in fact, members of Baron One, L.L.C., they were also valid creditors who held documented loans in writing.
La. C.C. Art. 2809 states:
A partner owes a fiduciary duty to the partnership and to his partners. He may not conduct any activity, for himself or on behalf of a third person, that is contrary to his fiduciary duty and is prejudicial to the partnership. If he does so, he must account to the partnership and to his partners for the resulting profits.
In the case of Quinn-L Corp. v. Elkins,[11] the trial court noted in regard to fiduciary duty:
Stated another way, the relation of partners is fiduciary in character and imposes on the members of the partnership the obligation of the utmost good faith in their dealings with one another with respect to partnership affairs, of acting for the common benefit of all the partners in all transactions relating to the firm business, and of refraining from taking any advantage of one another by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind. 68 C.J.S. Partnership § 76; Henley v. Haynes, 376 So.2d 1030 (La.App. 1st Cir.1979), writ denied, 377 So.2d 843 (La.1979).
In its Reasons For Judgment, the trial court made the following findings regarding the alleged bad faith or breach of fiduciary duty of Tesson and Monroe:
Plaintiffs are asking this Court to believe that the delays in construction of the Mandeville project, the lease of the adjacent piece of property for $900.00 a month, and non-receipt of the August installment were the reasons for their calling the $250,000.00 loan and wanting out of the commitment. These arguments fly in the face of logic.
Logic and common sense say that a thirty- to sixty-day delay in construction of the convenience store does not cause an investor to want out of a project especially when the other investors are willing to front the cash to make installment payments pending opening of the business. Logic and common sense say that the mere fact of having to lease adjacent land in the amount of $900 per month (which land had potential upside value for other commercial development) would not warrant prudent investors to attempt to get out of a project. Logic and common sense say that when investors stand to gain a 44% ownership interest in a business venture by merely loaning money over a four year period (which they will receive back, along with an interest rate of over twice the interest rate paid on savings accounts), with no "out-of-pocket" money on their part, they would not "want out" of the project for seemingly minor reasons. Logic and common sense also say that a lucrative truck stop business in LaPlace[12] (involving some of the defendants but not the plaintiffs) may have been a not insignificant motivation in plaintiffs calling the loan and disrupting the business plans of Baron One, L.L.C.
Based on the foregoing, the Court finds that Mr. Robert Monroe and Mr. *535 Pat Tesson violated their fiduciary duty in calling the loan on the project.
While the trial court implies that Tesson and Monroe somehow sought to take advantage of the truck stop opportunity for themselves, and that they called in the note to effectively cripple the opportunity for plaintiffs in reconvention, the record is devoid of any evidence that Tesson and Monroe ever did, in fact, do anything to take advantage of the truck stop opportunity. Patrick Tesson testified that he and Monroe discussed the opportunity but decided that they were not interested. Furthermore, both Tesson and Monroe testified to the effect that the $4,900,000.00 truck stop project undertaken by plaintiffs in reconvention was a concern because it would considerably dilute the net worth backing the personal guarantees on the convenience store projects. In addition to this, the record contains several factors cited by Monroe and Tesson which indicated that they were dissatisfied with the progress and management of Baron One.
La. C.C. Art. 2811 provides:
A partner who acts in good faith for the partnership may be a creditor of the partnership for sums he disburses, obligations he incurs, and losses he sustains thereby.
La. C.C. Art.1983
Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith.
The promissory note executed by Baron One, L.L.C. in favor of Tesson and Monroe provides, in relevant part:
DEFAULT. The following actions and/or inactions shall constitute default events under this Note:
Default Under This Note. Should Borrower default in the payment of principal and/or interest under this Note.
. . .
LENDERS RIGHTS UPON DEFAULT, Should any one or more default events occur or exist under this Note as provided above, Lender shall have the right, at its sole option, to declare formally this Note to be in default and to accelerate the maturity and insist upon immediate payment in full of the unpaid principal balance then outstanding under this Note, plus accrued interest, together with reasonable attorney's fees, costs, expenses and other fees and charges as provided herein. [Emphasis as found in the original].
The promissory note also provides that the "first principal payment is due August 11, 1997 ..." The plaintiffs in reconvention do not dispute their nonpayment of the first principal payment on August 11, 1997, and, clearly, nonpayment by the plaintiffs in reconvention was sufficient to trigger the default provision of the note that the parties had agreed upon.
Considering the record as a whole, we find that the trial court erred in its holding that a fiduciary breach by Tesson and Monroe occurred. Accordingly, for the foregoing reasons, we reverse the award of damages to plaintiffs in reconvention, and pretermit discussion on Tesson and Monroe's remaining assignment of error. In all other respects the judgment is affirmed. The parties are assessed their own costs.
AFFIRMED IN PART; REVERSED IN PART
NOTES
[1] In that case, defendants tendered payment of $295,740.61 into the registry of the court, representing the amount of the $250,000 principal on the note together with interest. The tender was made with a full reservation of rights. Tesson and Monroe were further paid attorney's fees of $89,733.16 that they incurred in collecting on the note.
[2] 02-2660, pp. 9-10 (La.6/27/03), 851 So.2d 1006, 1023.
[3] 583 So.2d 918 (La.App. 1 Cir.1991); writ denied, 588 So.2d 107 (La.1991).
[4] 688 So.2d 67 (La.App. 5 Cir.1997).
[5] Id. at 68.
[6] XXXX-XXXX (La.App. 4 Cir. 10/3/01), 798 So.2d 1141; writ denied, 2001-2939 (La.1/25/02), 807 So.2d 840.
[7] Glod v. Baker 2002-988 (La.App. 3 Cir. 8/6/03), 851 So.2d 1255; writ denied, 2003-2482 (La.11/26/03), 860 So.2d 1135.
[8] La. C.C.P. art. 927(A)(5).
[9] Louisiana Paddlewheels v. Louisiana River-boat Gaming Com'n, 94-2015 (La.11/30/94), 646 So.2d 885, 888.
[10] Honeywell, Inc. v. Sierra, 543 So.2d 594 (La.App. 4 Cir.1989).
[11] 519 So.2d 1164 (La.App. 1st Cir.1987); writ dismissed, 520 So.2d 415 (1988).
[12] The record contains testimony from several witnesses which said that the "truck stop" opportunity was a large facility on the corner of Interstate 10 and Highway 51 in LaPlace, Louisiana, that would feature video poker machines.