GARRETT, J.
| ¶ This case arises from a short two-page letter agreement that was executed in connection with a project to build a hotel. L.H. Commercial Real Estate Services, Inc., d/b/a/ Lea Hall Properties (“LHP”), appeals from a judgment finding that Roy Griggs, Ravish V. Patwardhan, M.D., and IF Enterprise of Shreveport, LLC (“IF”), are not liable in solido to LHP for a financing fee of $54,000. Griggs, Patwar-dhan, and IF filed in this court an exception of no right of action against LHP. Griggs and Patwardhan also filed an answer to the appeal, claiming the trial court erred in ordering them to pay LHP $2,240 for a building permit fee waiver. For the following reasons, we affirm in part and reverse in part the trial court judgment.
FACTS AND PROCEDURAL HISTORY
Griggs, Patwardhan, and IF, a company formed by Griggs and Patwardhan, undertook to construct a Sleep Inn hotel in Shreveport near the LSU Health Sciences Center. Rex Bryan held himself out to be an expert in “economic development.” He was also a co-owner of LHP, which is a real estate company. An attorney for Griggs suggested that Bryan might be able to assist in the project which was being located in a low income area as Bryan had expertise in getting “tax credits, incentives, things like that.”
On September 25, 2007, Bryan prepared and sent a letter agreement to Griggs and Patwardhan which was captioned “Re: Enhancements Program Management” and specified in pertinent part:
Rex Bryan or his assigns will provide economic development services that may enhance the financial structure of [your] development in the area of LSU Medical Facility in Shreveport, La. These services may include financing of new facilities, renovation of building or properties, obtaining tax credits, tax exemptions, tax rebates, grants and/or any other enhancements |2provided by state, local, regional and federal programs. These services would also include the processing and/or monitoring of the financing and enhancement programs.
The fee payable to Rex Bryan or his assigns:
• 1% financing program utilized.
• 8% any tax credits, tax exemptions, tax rebates, grants and other enhancements utilized in project.
The total fee is due and payable at the closing or when funds are made available, which ever comes first, with one exception. It [sic] that the processing of enhancements involve a period of time, the enhancement programs total saving will be estimated, then 10% of those savings will be paid in 4 equal payments prior to formal approval of any of the enhancement programs. Then 90% of fee is due as stated above, when funds are made available or at closing, which ever comes first.
Nothing contained in this letter shall obligate you to pursue or utilize any financing program or enhancement we may suggest. Except for the four installment payments described above, no fee will be due to us unless you, in your sole discretion, elect to close or receive funds under a transaction involving a *1257 financing program or enhancement which we have arranged.
The letter was written on the letterhead of Rex Bryan, CED, with a logo beside Bryan’s name reading “Economic Development.” [1] LHP was not mentioned anywhere in the letter.[2]
On November 27, 2007, Griggs and Pat-wardhan signed the letter acknowledging and accepting its terms. On November 28, 2007, Bryan signed the letter above a signature line that read “Mr. Rex Bryan R.B. Developments, LLC.” In May 2008, IF purchased the immovable property for the project. Neither Bryan nor LHP was involved in the real estate Rpurchase. On August 19, 2009, IF entered into a multiple indebtedness mortgage with Red River Bank (“RRB”) for $5.4 million to construct the hotel. The mortgage was executed by Griggs and Patwardhan as managers of IF.
Bryan claims he helped the defendants obtain the financing from RRB and that he secured a waiver of a building permit fee of $28,000. On September 3, 2009, Bryan sent an invoice to Griggs and Patwardhan for $54,000, representing a one percent fee for the RRB loan and $2,240, representing an eight percent fee for the waiver of the building permit fee. Griggs and Patwar-dhan refused to pay and this litigation ensued.
On December 9, 2009, Bryan filed suit entitled “Petition in Breach of Contract” against Griggs and Patwardhan for breach of the letter agreement and to collect the total fees of $56,240 and other damages. Paragraph three of the petition stated: Plaintiff shows that subsequent to entering into the contract executed by all of the parties on or before November 28, 2007, plaintiff faithfully undertook to provide the services to defendants for which he contracted to provide to the best of his ability and expended considerable hours in the contracted activities to the detriment of his obligations to his principle [sic] employer, Lea Hall Properties, which resulted in the parties subsequently agreeing that plaintiffs employer, Lea Hall Properties, would be compensated on an hourly basis, billed monthly, which subsequently occurred through all of plaintiffs activities under the contract through August 31, 2009, for which Lea Hall Properties was paid for plaintiffs hourly services.
Griggs and Patwardhan answered, asserting that the letter agreement was ambiguous and did not reflect the agreement of the parties. They claimed that Bryan represented to them that he could obtain specialized 14financing by governmental or other nontraditional entities and that they did not agree to pay Bryan to obtain traditional bank financing. The defendants also pointed out that, during their dealings with Bryan, the parties entered into another agreement providing that LHP would be compensated for Bryan’s time at $95 per hour, to be billed monthly and Bryan had already been paid for his work.
Griggs and Patwardhan also filed a supplemental and amended answer and recon-ventional demand. They claimed that the loan with RRB was obtained by IF and not Griggs and Patwardhan in their individual capacities. They alleged that Bryan failed to comply with the requirements of a li *1258 censed loan broker under the Louisiana loan brokers’ statute found in La. R.S. 51:1910 et seq. and therefore, he was not entitled to recover a fee for obtaining financing.[3]
Bryan answered and claimed that the loan brokers’ statute did not apply to any person licensed by the Louisiana Real Estate Commission who arranges financing in the normal course of representing a client for the purchase, sale, lease, or rental of real estate. Although Bryan did not have a real estate license, he claimed that he conducted his business through LHP, which was a licensed real estate broker.
Griggs and Patwardhan then filed an exception of no right of action, claiming that if Bryan obtained financing, he did so as a loan broker. Because he did not comply with the licensing and registration requirements |sfor loan brokers, Griggs and Patwardhan argued that Bryan had no right of action to recover any fees.
Before this exception could be heard, Bryan filed a supplemental and amending petition adding LHP as a plaintiff and IF as a defendant. Bryan alleged for the first time that he had assigned the letter agreement with Griggs and Patwardhan to LHP and that Griggs and Patwardhan assigned the contract to IF.
Griggs, Patwardhan, and IF then filed an additional exception of no right of action claiming that LHP was not a party to the letter agreement and had no rights under it. They contested Bryan’s assertion that he assigned the letter agreement to LHP, arguing that this was not supported by the facts and was prohibited by law. The defendants contended that they contracted with Bryan because of his special skills or qualifications. Thus, under La. C.C. art. 1766, such an obligation is strictly personal and La. C.C. art. 2642 precludes the assignment of a strictly personal obligation. The defendants also argued that IF was improperly made a defendant because the company was not a party to the agreement and had no obligations under the letter agreement.
In their opposition to the exceptions, Bryan and LHP attached Bryan’s individual deposition and the corporate deposition he gave on behalf of LHP. In his personal deposition, Bryan stated that he had experience putting together financing and enhancement programs and claimed to be a certified economic developer, but he did not have any kind of a professional license to carry out this function. He was not a licensed Rrealtor. Bryan acknowledged that he authored the letter agreement at issue here and claimed that he verbally assigned the agreement to LHP on September 25, 2007, the date he wrote the agreement.[4] However, he did not tell Griggs and Patwardhan about the assignment. When asked by the defendants’ attorney what the phrase “or his assigns” meant in the letter agreement, Bryan said that he may bring in a partner or sell his interest in it “so it’s a common term I use so that if I die I have a contract and it can be assigned to someone else ... and they don’t pay me unless they get the benefit.”
Bryan acknowledged that there was a subsequent agreement by the defendants to pay $95 per hour for Bryan’s work in *1259 connection with the construction of the hotel. This agreement resulted from Bryan’s actions in acting as the defendants’ representative and coordinating activities necessary for the construction of the hotel. These included finding an architect, builder, and management company, and choosing design packages for the interior of the hotel. Bryan said that he decided how much of this money he would share with his partners at LHP. He generally received 80 percent and his two partners at LHP shared 20 percent. In the corporate deposition, Bryan reiterated that he assigned the letter agreement with the defendants to LHP verbally.
On July 19, 2010, a hearing was held on the exceptions of no right of action before Judge Ramon Lafitte. The entire transcript of the hearing is not included in the record. We have only the in-court testimony of Bryan, [7the exceptions, oppositions, and exhibits filed with these together with various exhibits that were introduced. In addition to questions posed by the attorneys, Bryan responded to queries by the trial court. The trial court asked Bryan whether he was representing himself or LHP at the time he entered into the agreement. Bryan stated that he believed he was representing both. However, Bryan also testified that he assigned the agreement to LHP later on “after we got into [it].” This testimony was somewhat different from that given in his deposition. He admitted that he was not a loan broker. Bryan stated that he brought the defendants’ together with RRB and should be paid the financing fee under the letter agreement.
The trial court took the matter under advisement. On June 24, 2011, the trial court filed an opinion sustaining the exception of no right of action as to Bryan, but overruling the exception as to LHP. The trial court reasoned that because Bryan was not a licensed loan broker under Louisiana law he was personally prohibited from claiming or collecting fees. The opinion did not specifically address the $2,240 fee for obtaining the waiver of the building permit fee.
The trial court mentioned the defendants’ argument that Bryan could not assign the letter agreement because the parties had contracted for the special skills and qualifications possessed by Bryan and such a strictly personal agreement could not be assigned. However, the trial court did not analyze or address the merits of this issue. Relying solely upon the “or his assigns” language in the letter agreement, the trial court reasoned that “this language indicates authority for Bryan to assign the agreement.” The trial |scourt denied the exception of no right of action as to the purported assignee, LHP. When this ruling was made, the trial court, of course, did not have the benefit of all the evidence that would be adduced at the trial on the merits.
Griggs, Patwardhan, and IF filed a writ application in this court, objecting to the ruling on the exceptions. The application was denied with this court stating, “upon the showing made, the exercise of this Court’s supervisory jurisdiction is not warranted.” Bryan did not seek review of the trial court ruling. Therefore, the decision finding that Bryan had no right of action was final.
Unfortunately, Bryan died on July 4, 2011. Although the trial court found that Bryan had no right of action against the defendants, a reconventional demand was still pending against him. Bryan’s succession was substituted as a defendant in reconvention by the plaintiffs in reconvention.
After the ruling on the exceptions of no right of action, Griggs, Patwardhan, and IF answered the first supplemental and *1260 amending petition, alleging that they were never notified that Bryan assigned the letter agreement to LHP and only became aware of a purported assignment when Bryan amended his petition to add LHP as a plaintiff. They claimed there was no evidence that LHP accepted an assignment from Bryan. They reasserted their argument that Bryan’s obligation under the agreement was personal and could not be assigned. They also claimed that LHP did not comply with the law regarding loan brokers and was barred from bringing an action to recover for services purportedly performed for the defendants.
|nOn May 1, 2012, Judge Leon Emanuel presided over the trial on the merits. The parties entered into a joint stipulation that if the president of RRB, Harold Turner, appeared at trial, he would testify that he had known Griggs from living in the same neighborhood and doing business with him. IF became a customer of RRB for financing the hotel project and Mark L. Rowe, vice-president of commercial lending at RRB, was the loan officer that handled the loan. Turner participated in the loan review and approval process while Rowe handled the dealings with Griggs, Patwar-dhan, IF, and Bryan. Since Bryan was deceased, his depositions, together with his testimony from the hearing on the exceptions were introduced into evidence.
Rowe testified that he knew Bryan and the two other owners of LHP, Jenny Ken-non and Deborah Camus. Rowe stated that Bryan told him about the hotel project, but Bryan and LHP were out of the picture when it came time for the project to close.
Camus, the president of LHP, testified that Bryan conducted all of his business through LHP. She stated that Bryan told her about the letter agreement with the defendants the day the agreement was signed and she put a copy of the document in the LHP files.[5] She confirmed that there was another agreement for the defendants to pay LHP for the time Bryan expended on their behalf, at a rate of $95 per hour. Camus testified that LHP has a real estate license, but not a loan broker license. Camus stated that Bryan did the majority of the work on the hotel project and she Improvided only minimal assistance. Camus said that she attended a general meeting on financing as well as a meeting regarding the hiring of a management company for the hotel. Camus stated that she and Kennon offered opinions about color schemes for the hotel, but were not given authority to make those selections.
Griggs testified that he was the managing member of IF. He also owns numerous McDonald’s franchises in Louisiana and Texas. According to Griggs, one of his attorneys suggested Bryan for assistance in obtaining tax credits and incentives. Griggs claimed that he and Patwardhan were not aware that Bryan was affiliated with LHP when they began their relationship. He testified that the agreement was entered into with Bryan because of the unique skills Bryan represented that he had. Griggs testified that he understood that portion of the letter agreement with Bryan regarding a one percent fee for finding funding to encompass only nontraditional financing as he did not need assistance with a traditional bank loan. Griggs stated that Bryan never told him that he assigned the letter agreement to LHP. He first became aware of the alleged assignment only after receiving the amended pleadings filed by Bryan in this matter. Griggs said he and Patwardhan never accepted the assignment of the agreement to LHP. Griggs denied that he *1261 and Patwardhan assigned the letter agreement to IF.
Exhibits that were introduced showed that Bryan kept detailed time records labeled “Rex Bryan Consulting” and billed for these services at the $95 per hour rate. These invoices were promptly paid by IF. A parting of the ways occurred. A letter dated September 1, 2009, from Bryan to Griggs |nand Patwardhan acknowledged that, as of August 31, 2009, Bryan was no longer the owners’ representative in the hotel construction project. The letter went on to state, “I will continue to develop the incentive programs and [to be] available to meet with you any time concerning these monetary benefits.”
During the trial, there was extensive discussion about the binding effect of the prior ruling made by Judge Lafitte on the exception of no right of action and the writ denial by this court. No rulings were made at that time and the trial court took the case under advisement.
On October 22, 2012, the trial court issued an opinion in favor of LHP and against Griggs and Patwardhan in solido for $14,640.95. The trial court was apparently confused regarding some invoices that had been introduced as exhibits. The trial court inexplicably found that $14,640.95 in charges that were not in dispute and in fact had been paid were due. Judgment was rendered in favor of the executor of Bryan’s succession, dismissing the claims of Griggs and Patwardhan against it. All other claims were dismissed with prejudice.
In reasons for judgment, the trial court declined to reconsider or revisit the prior ruling on the exceptions of no right of action despite the fact that the record at trial was more extensive than what was presented before Judge Lafitte. The trial court said it would not revisit the issue of whether the letter agreement had been assigned to LHP, yet stated that Bryan had assigned the agreement to LHP. However, the trial court did not address the issue of whether the agreement was for personal services which 112could not be assigned under Louisiana law. The trial court found that Bryan provided services to the defendants as a certified economic developer through the course of his business with LHP. However, in denying recovery to LHP for the $54,000 fee for obtaining financing, the trial court essentially determined that Bryan did not earn the fee. According to the trial court, the defendants made separate efforts to obtain financing and by September 1, 2009, Bryan was not the defendants’ representative. The trial court found that LHP was not involved in the financial agreement between IF and RRB and that Bryan’s efforts and those of LHP did not result in the utilization of any financing program or enhancement arranged by LHP. The trial court held that the plaintiff failed to carry its burden of proof. The trial court also found there was no proof to substantiate the defendants’ claims for damages and attorney fees.
Both sides filed motions for new trial. Griggs and Patwardhan asserted that the trial court erred in ordering them to pay $14,640.95, claiming that LHP had not requested this amount and all invoices had been paid. LHP claimed there was no evidence to support a denial of recovery to the company for the financing fee and that there was no basis in law for the trial court to accept parol evidence from Griggs regarding his understanding of the terms of the contract to provide economic development services. LHP also argued that the evidence showed that it, through Bryan, obtained a waiver of a building permit fee and was entitled to recover $2,240 for this service.
*1262 11sAt the hearing on the motions for new trial, LHP acknowledged that all invoices based on hourly work had been paid by the defendants and the company was not owed $14,640.95, as stated in the judgment. LHP argued that it was entitled to the one percent financing fee of $54,000, as well as the eight percent fee of $2,240 for the waiver of the building permit.
On December 10, 2012, the trial court issued a judgment granting the motion for new trial filed by Griggs and Patwardhan and granting in part and denying in part the motion filed by LHP. The trial court rescinded that portion of the prior judgment ordering Griggs and Patwardhan to pay LHP $14,604.95, but found that LHP was entitled to $2,240 regarding the waiver of the building permit fee. The trial court maintained its prior finding that Bryan and/or LHP were not entitled to a fee regarding the RRB loan. All claims by the defendants against Bryan’s succession were dismissed and all other claims in the matter were dismissed with prejudice.
LHP appealed. Griggs, Patwardhan and IF answered the appeal and reasserted them exception of no right of action.
EXCEPTION OF NO RIGHT OF ACTION
The defendants have reasserted in this court their exception of no right of action as to LHP. They argue that the letter agreement between Bryan and the defendants could not be assigned, there was no proof that an assignment occurred, the alleged oral assignment was invalid, the defendants were not given any notice of an assignment, and the real estate exception to the loan broker’s statute did not apply to LHP under the facts |14of this case. For the following reasons, we find that the exception of no right of action should be sustained for the reasons outlined below.
Legal Principles
An action can be brought only by a person having a real and actual interest which he asserts. La. C.C.P. art. 681; Schexnayder v. Gish, 41,819 (La.App.2d Cir.2/7/07), 948 So.2d 1259. The exception of no right of action tests whether the plaintiff has any interest in judicially enforcing the right asserted. St. Jude Medical Office Bldg. Ltd. P’ship v. City Glass and Mirror, Inc., 619 So.2d 529 (La.1993); Caddo-Bossier Parishes Port Com’n v. Arch Chemicals, Inc., 36,505 (La.App.2d Cir.10/23/02), 830 So.2d 498. The function of the exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. The exception of no right of action assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case has a legal interest in the subject matter of the litigation. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Com’n, 94-2015 (La.11/30/94), 646 So.2d 885.
Unlike the trial of an exception of no cause of action, evidence is admissible on the trial of the exception of no right of action to support or controvert any of the objections pleaded, when the grounds therefor do not appear from the petition. La. C.C.P. art. 931; Caddo-Bossier Parishes Port Com’n v. Arch Chemicals, Inc., supra. The burden of proof of establishing the exception of no right of action is on the exceptor. Wagoner v. Chevron USA, Inc., 45,507 (La.App.2d Cir.8/18/10), 55 So.3d 12.
| i¡;The exception of no right of action is peremptory and may be pleaded at any stage of the proceeding. La. C.C.P. art. 928. Failing to disclose a right or interest in the plaintiff to institute the suit may be noticed by either the trial or appellate *1263 court on its own motion. La. C.C.P. art. 927.
The overruling of a peremptory exception is merely an interlocutory order and the court has the right, at any stage of the proceeding at which the objection was made, to set aside that decree and to sustain the exception upon finding that it erred in overruling it. R.G. Claitor’s Realty v. Juban, 391 So.2d 394 (La.1980); Babineaux v. Pemie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (1972); Wood v. Omni Bancshares, Inc., 10-216, 10-567 (La.App.5th Cir.4/26/11), 69 So.3d 475.
The exception of no right of action presents a question of law requiring a de novo review by the appellate court. See Wagoner v. Chevron USA, Inc., supra; Schexnayder v. Gish, supra.
In this matter, the defendants properly reasserted their exception of no right of action in this court. Neither the trial court nor this court is bound by the prior trial court action in overruling the exception of no right of action as to LHP.
Strictly Personal Obligation
Rights and obligations arising from a contract are heritable and assignable unless the law, the terms of the contract or its nature preclude such effects. La. C.C. art.1984. All rights may be assigned, with the exception of those pertaining to obligations that are strictly personal. La. C.C. art. 2642.
| ifiLa. C.C. art. 1766 defines strictly personal obligations:
An obligation is strictly personal when its performance can be enforced only by the obligee, or only against the obligor. When the performance requires the special skill or qualification of the obligor, the obligation is presumed to be strictly personal on the part of the obligor. All obligations to perform personal services are presumed to be strictly personal on the part of the obligor.
When the performance is intended for the benefit of the obligee exclusively, the obligation is strictly personal on the part of that obligee.
Strictly personal obligations are explained in S. Litvinoff, Obligations § 4.11-4.12, pp. 58-59, in 5 Louisiana Civil Law Treatise (2d ed.2001) as follows:
[W]hen performance can be demanded only by a certain person and not by his successors, the obligation is strictly personal as to that person. Likewise, when performance can be demanded only from a certain person and not from his successors, the obligation is strictly personal as to that person[.]
Thus, all obligations to perform personal services are presumed to be strictly personal on the part of the obligor. Indeed, when a skill is involved, as for the building of a structure, the painting of a portrait, the making of a denture, or the rendering of medical services, it would make no sense for the obligee to enforce performance against heirs of the obligor, who may not possess that skill at all, or not in the same degree as their ancestor, and lack therefore the ability to perform in the manner expected.
The same reasons that make an obligation strictly personal, and therefore not heritable, in the sense that it cannot be enforced against a successor of the obligor, suffice to explain that he may not transfer his passive side of the obligation by an act between living persons, that is, he may not delegate his duty to perform. Indeed, when such an obligation is conventional, the obligor’s particular skill, and also the education, training and experience through which it was acquired, are the reasons that inclined the obligee, in the vast majority of cases, to select that particular obligor to *1264 render the expected performance. That being so, the obligee’s interest |17would be defeated, or at least frustrated, if the law were to force him to receive a performance rendered not by the selected obligor but by a substitute one who might not possess the desired skill, or might possess it only in a lesser degree. For that reason the Louisiana Civil Code clearly states in another section that, though performance may be rendered by a third person, even against the will of the obligee, that is not so when he has a special interest in a performance rendered only by the obligor, as is no doubt the case when the obligation is strictly personal on the part of the obligor[.]
In sum, out of respect for human personality the law recognizes that many qualities that are personal to human beings are neither identical nor interchangeable. For that reason, those obligations the performance of which requires such qualities are not transferable. As a result, an obligation that is strictly personal on the part of the obli-gor may not be enforced by the obligee against the obligor’s heirs, nor may the latter claim that the obligee must accept a performance rendered by them, nor may the obligor delegate to another person his duty to perform. [Footnotes omitted.][6]
Discussion
Based upon the entire record in this case, it is clear that the obligations created by the letter agreement were strictly personal on the part of the obligor, Bryan, and required the special skills or qualifications that he represented that he possessed. Bryan’s lengthy résumé, submitted to the defendants to induce them to enter into the agreement with him, shows that he claimed to be an economic development consultant with “[bjroad based marketing and management skills focusing on economic development activities of associations, governmental and corporate entities.” He stated that he had been a certified economic developer since 1978. His activities | isincluded obtaining bond financing for various projects with tax-exempt bonds, infrastructure development using government grants, development of low-interest loan programs, and utilization of “other financial resources such as major lending institutions to enhance the opportunity for significant projects to materialize.” Bryan outlined a number of projects he had been involved with as well as the cash rebates, grants, or financing he claimed to have obtained for them.
Bryan held himself out to possess special skills and qualifications in the area of economic development. As testified to by Griggs, those factors and the unique skills possessed by Bryan were the reason that the defendants entered into the letter agreement with him to obtain financing and other enhancements for the hotel project. In the letter agreement, he obligated himself to perform personal services for the defendants. The letter agreement was on Bryan’s stationery, not that of LHP.
The record also shows that Bryan considered that the letter agreement with the defendants was for his personal services. In his letter of September 1, 2009, acknowledging that he was no longer the *1265 owners’ representative for the building project, Bryan states that “I appreciated the opportunity to work with you,” “I understand that Rex Bryan is no longer the Owner’s Representative,” “I will continue to develop the incentive programs” and “if I can be of assistance in the future, please call.”
Even though Bryan claimed he assigned the letter agreement to LHP, it was Bryan and not any other partner or employee of LHP who performed the obligations owed to the defendants in that agreement. There is no | ^showing that any other person associated with LHP had the qualifications or skills possessed by Bryan. Only Bryan could fulfill the obligations created by the letter agreement. The record shows that any participation in the project by any other employee or partner of LHP was minimal, and largely consisted of input into the interior design scheme and other incidentals not covered in the letter agreement. We further note that these services, as well as time spent by Bryan in attempting to secure financing and other enhancements for the project, were billed to the defendants at the rate of $95 per hour and were paid by the defendants. The record reflects these payments totaled $20,421.56.
The obligations undertaken in the letter agreement were strictly personal to Bryan; he could not assign the letter agreement to LHP or to any other entity or person. Further, simply because the letter agreement refers to Bryan or his “assigns” does not mean that Bryan could legally assign the agreement or that the defendants agreed to an assignment. Bryan’s testimony regarding this language demonstrates that his understanding of the concept was vague.
Because Bryan could not assign the letter agreement, we sustain the exception and hold that LHP has no right of action against the defendants for the fee associated with securing the loan from RRB or the fee for obtaining the waiver of the building permit fee.[7]
|20We are mindful of La. C.C.P. art. 934, stating that when the grounds for a peremptory exception may be removed by amendment to the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection raised by the exception cannot be so removed, the action, claim, demand, issue, or theory shall be dismissed. In this case, the ground's for the exception of no right of action cannot be removed. Therefore, the demands of LHP against the defendants are dismissed.
Even though the defendants admit that Bryan would have been entitled to the fee for obtaining the waiver of the building permit fee, and that the loan brokers’ statute would not have barred recovery for this item, as stated above, Bryan could not assign his obligation in the letter agreement to LHP. Further, the trial court granted the exception of no right of action as to Bryan and Bryan did not seek review of that ruling. Bryan’s succession remained a party to this litigation only in the capacity of a defendant in reconvention. La. C.C.P. art. 2164 provides that an appellate court shall render any judgment which is just, legal, and proper upon the *1266 record on appeal. However, an appeal cannot be taken by a party who confessed judgment in the proceedings in the trial court or who voluntarily and unconditionally acquiesced in a judgment rendered against him. La. C.C.P. art.2085. La. C.C.P. art. 2133 states that an appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. Bryan is no longer a plaintiff in this action and his succession [2ihas not requested any relief in this court. Therefore, we are constrained to hold that we cannot make an award to Bryan’s succession for his efforts in obtaining the waiver of the building permit fee. See and compare Grimes v. Louisiana Med. Mut. Ins. Co., 2010-0039 (La.5/28/10), 36 So.3d 215; Hart v. Masur Dean, 47,012 (La.App.2d Cir.3/7/12), 90 So.3d 30; State ex rel. J.M. v. Brooks, 41,952 (La.App.2d Cir.12/20/06), 946 So.2d 302.
Because we sustain the exception of no right of action as to LHP, and find that LHP is not entitled to recover for the $54,000 financing fee or the $2,240 fee for obtaining the waiver of a building permit fee, we need not consider the other arguments made by the defendants regarding the validity of the assignment or the defendants’ answer to the appeal. We also do not reach consideration of the issues raised by LHP regarding the factual findings of the trial court in this ease on the merits, its evidentiary objection that the trial court improperly considered parol evidence as to the scope and intent of the letter agreement, and its argument that the trial court erred in failing to include IF as a judgment debtor.
CONCLUSION
For the reasons stated above, we sustain the exception of no right of action filed by the defendants as to LHP and affirm that portion of the trial court judgment denying LHP’s claim against the defendants for the fee for obtaining financing. We reverse that portion of the trial court judgment ordering the defendants to pay LHP a fee of $2,240 for obtaining a waiver of the building permit fee. The grounds for the exception of no right of action cannot be removed by amendment to the petition. Therefore, all | ^claims by LHP against the defendants Roy Griggs, Ravish V. Patwar-dhan, M.D., and IF Enterprise of Shreveport, LLC, are dismissed. All costs in this court are assessed to the plaintiff, LHP.
AFFIRMED IN PART; REVERSED IN PART; RENDERED.

. The designation "CED” ostensibly stands for certified economic developer.

. On September 16, 2007, Bryan, on the same letterhead, had written to Griggs and Patwar-dhan describing possible enhancements and referenced enterprise zone, property tax exemption, community development block grant, new market tax credit, angel investor program, and federal government grant.

. The reconventional demand filed by Griggs and Patwardhan asserted that Bryan’s violation of the loan brokers’ statute amounted to unfair trade practices entitling them to a reimbursement of fees as well as damages and attorney fees under La. R.S. 51:1915. Griggs and Patwardhan later asserted this same claim against LHP. These demands were denied by the trial court and are not before this court on appeal.

. We note that the letter agreement was not signed by Bryan until November 28, 2007.

. Again we note that Bryan did not sign the letter agreement until November 28, 2007.

. Some examples of strictly personal obligations are legal malpractice claims, Taylor v. Babin, 2008-2063 (La.App. 1st Cir.5/8/09), 13 So.3d 633, writ denied, 2009-1285 (La.9/25/09), 18 So.3d 76; invasion of privacy claims, Tatum v. New Orleans Aviation Bd., 2011-1431 (La.App.4th Cir. 4/11/12), 102 So.3d 144, writ denied, 2012-1847 (La.11/9/12), 100 So.3d 838; and some non-competition agreements, Jeansonne v. El Hindy, 413 So.2d 999 (La.App. 4th Cir.1982).

. Appellate courts review judgments and not reasons for judgment. Moreno v. Entergy Corp., 2012-0097 (La.12/4/12), 105 So.3d 40; Hickman v. Bates, 39,178 (La.App.2d Cir. 12/15/04), 889 So.2d 1249. The trial court denied recovery to LHP for the $54,000 financing fee, finding that Bryan did not actually obtain the loan for the defendants from RRB. We affirm that result, but for a different reason. We find that LHP could not recover for the financing fee because Bryan could not validly assign the letter agreement.