Judgment rendered December 18, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,970-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

| | |
|---|---|
| NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-1 | Plaintiff-Appellee |

versus

| | |
|---|---|
| RICHARD PLEASANT PATSY BROWN | Defendants-Appellants |

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2021-0377

Honorable Alvin R. Sharp, Judge

* * * * *

| | |
|---|---|
| PLEASANT AND WILLIAMS, THE BARRISTERS' LAW GROUP, LLC By: Jessica W. Williams | Counsel for Appellants |
| SESSIONS ISRAEL & SHARTLE, LLC By: Justin H. Homes | Counsel for Appellee |
| EATON GROUP ATTORNEYS, LLC By: Gregory M. Eaton    Lewis E. Eaton    Matthew J. Sylvest    Markita Hawkins | |

* * * * *

Before COX, THOMPSON, and MARCOTTE, JJ.

**MARCOTTE, J.**

This appeal arises from the Fourth Judicial District Court, Parish of Ouachita, the Honorable Alvin Sharp presiding.  Appellants-defendants, Richard Pleasant and Patsy Brown, appeal the trial court's ruling granting summary judgment in favor of plaintiff-appellee, National Collegiate Student Loan Trust 2004-1 ("NCSLT 2004-1"), finding them liable for an outstanding student loan balance.  Defendants also argue that the trial court incorrectly denied their exceptions of no right of action and lack of procedural capacity, as well as their motion to consolidate.  For the following reasons, we affirm.

## FACTS

This suit arises from a defaulted student loan.  On February 5, 2021, NCSLT 2004-1 filed a petition in Ouachita Parish against Pleasant and Brown, seeking judgment in the amount of $64,375.81, together with accrued interest of $28,634.78, an additional 3.5% interest from the date of judgment, and costs of proceedings.  Pleasant was also sued in five other student loan collection actions in Ouachita Parish, each by a different but related plaintiff.  Pleasant's wife, Kristen Pleasant, was also sued for her student loan debt by six different entities related to NCSLT 2004-1 in Ouachita Parish on the same day.   Brown was the guarantor for Richard and Kristen Pleasant's loans.

The petition was supported by a January 11, 2021, affidavit of Anna Kimbrough with various exhibits.  Ms. Kimbrough, an employee of Transworld Systems, Inc. ("Transworld"), explained that American Education Services ("AES") was the previous loan servicer for NCSLT

2004-1, but now Transworld is the designated custodian of records concerning defaulted loan records and maintains records of all "electronic transactions pertaining to the educational loan, including, but not limited to, payments, credits, interest accrual and any other transactions that could impact the loan."

The petition, affidavit, and attachments alleged that on April 27, 2004, Pleasant signed a Non-Negotiable Credit Agreement ("Credit Agreement") to secure from Bank One, N.A. ("Bank One") an undergraduate student loan in the principal amount of $30,000.00, plus origination and finance charges.

The first page of the Credit Agreement included the following affirmation:

> By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Application/Promissory Note.

The Credit Agreement contained a promise to pay and the necessary features of a conventional obligation. In Section A, Pleasant promised "to pay to your order, upon the terms and conditions of this Application/Promissory Note, all principal, interest and other charges set forth herein."

Section B provided, in part:

> 1. By signing this Application/Promissory Note, and submitting it to you, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Application/Promissory Note.
> . . .
>
> 2. If you decide to make a loan to me, you will mail me the disbursement check (the "Disbursement Check") and a statement disclosing certain information about the loan in accordance with the federal Truth-in-Lending Act (the "Disclosure Statement") ... In addition to other information,

the Disclosure Statement will tell me the amount of my
disbursement and the amount of the Loan Origination Fee.
The Disclosure Statement is part of this
Application/Promissory Note....My endorsement of the
Disbursement Check will acknowledge receipt of the
Disclosure Statement and my agreement to be legally bound
by this Application/Promissory Note.

Pleasant and Brown did not dispute receiving the loan proceeds and

entering into a student loan contract.

The Disclosure Statement indicated the loan was disbursed on May 3,

2004, and specified the amount lent to Pleasant ($30,000) plus an origination

fee of $3,519.55. The Disclosure Statement also notified Pleasant that

finance charges on the interest-bearing loan over the full course of

repayment were estimated in the amount of $62,640, for an estimated total

repayment of $92,640.

On June 10, 2004, while the loan was still in good standing, Bank One

sold and assigned the loan to National Collegiate Funding, LLC ("NCF"), as

evidenced by a "Pool Supplement" of the same date. Article 1 of the June

10, 2004, Pool Supplement provided, in pertinent part:

[Bank One] hereby transfers, sells, sets over and assigns to
[NCF] ... each EDUCATION ONE Loan described in the
attached Schedule 2 ("the Transferred EDUCATION ONE
Loans")[.]
                            ***
[NCF] in turn will sell the Transferred EDUCATION ONE
Loans to The National Collegiate Student Loan Trust 2004-1[.]
                            ***
[Bank One] hereby transfers and delivers to [NCF] each
EDUCATION ONE Note evidencing such EDUCATION ONE
Loan and all Origination Records relating thereto[.]
                            ***
[NCF] hereby purchases said EDUCATION ONE Notes
on said terms and conditions.

Then, on the same day, NCF, as seller, sold the loan together with all

the other student loans in that pool, to NCSLT 2004-1 under a "Deposit and

3

Sale Agreement." NCF also assigned to NCSLT 2004-1 all of its rights, title, and interest in the Pool Supplement in which Pleasant and Brown's loan was listed. The June 10, 2004, Deposit and Sale Agreement provided, in pertinent part:

ARTICLE I
TERMS

This Sale Agreement sets forth the terms under which [NCF] is selling and [NCSLT 2004-1] is purchasing the student loans listed on Schedule 2 to each of the Pool Supplements set forth on Schedule A attached hereto (the "Transferred Student Loans").
…

ARTICLE III
SALE AND PURCHASE

Section 3.01. Sale of Loans. [NCF] hereby sells and [NCSLT 2004-1] hereby purchases the Transferred Student Loans.

Section 3.02. Assignment of Rights. [NCF] hereby assigns to [NCSLT 2004-1] and [NCSLT 2004-1] hereby accepts all of [NCF]'s rights and interests under each of the Pool Supplements listed on Schedule A attached hereto[.]

Consistent with Article I, the June 10, 2004, Pool Supplement by which NCF acquired the loan was identified on Schedule A of the June 10, 2004, Deposit and Sale Agreement, as follows:

Bank One, NA, dated June 10, 2004, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program and EDUCATION ONE Loan Program.

This was the same Pool Supplement in which the loan was scheduled as described above.

After the period for in-school deferment expired and the loan entered repayment, NCSLT 2004-1 received several payments on the loan before Pleasant and Brown defaulted. On September 1, 2011, the loan charged-off. Following charge-off, Pleasant and Brown made additional loan payments,

4

but those payments ceased on August 8, 2020, and the underlying collection action ensued.

On February 22, 2021, Pleasant and Brown filed exceptions of no right of action, lack of procedural capacity, and vagueness. Appellants argued first that under La. C.C.P. art. 699, NCSLT 2004-1 lacked capacity to appear as a plaintiff because only a trustee has the capacity to file suit on behalf of a trust, and that a trust itself has no right of action. Appellants further urged that NCSLT 2004-1's petition was devoid of well-pleaded facts setting forth a right of action that would allow NCSLT 2004-1 to enforce the alleged negotiable or nonnegotiable promissory note. Appellants contended NCSLT 2004-1 presented no exhibits or attachments that identify the entity as the holder of the promissory note, nor do the exhibits reflect that the alleged loan "represents information relative to [appellants'] student loans."

On May 10, 2021, NCSLT 2004-1 filed its opposition to the exceptions. NCSLT 2004-1 argued that it was a registered statutory trust under Delaware law with the explicit right to file suit in its own name, and the right to be recognized as a juridical person is recognized under Louisiana law pursuant to La. R.S. 9:1725(3). NCSLT 2004-1 further argued that its petition set forth a right of action as it sufficiently alleged that it was the owner of the loan issued through Bank One; that appellants were indebted to NCSLT 2004-1 in the amount of $64,375.81, plus interest and attorney fees; and the attached affidavit and exhibits evidence that NCSLT 2004-1 purchased the loan from the original creditor Bank One that identified the student loan by number and balance, as well as payment history, a copy of

5

the signed note with terms and conditions, and the Disclosure Statement. NCSLT 2004-1 further argued that its petition was not vague and clearly set forth a cause of action when the attachments to the petition were considered with it.

On March 1, 2021, Pleasant and Brown moved to consolidate this action with the 11 other matters involving either Pleasant, Brown, or both of them.

On June 14, 2021, the trial court heard arguments on the exceptions and, on July 12, 2021, overruled them. In so doing, the trial court relied on and adopted the reasoning of the Louisiana Third Circuit Court of Appeal in *Nat'l Collegiate Student Loan Trust 2006-1 v. Thomas*, 21-90 (La. App. 3 Cir. 6/2/21), 322 So. 3d 374, ("NCSLT 2006-1 v. Thomas") which held that business trusts like NCSLT 2004-1 were recognized by Louisiana statutory law as unincorporated foreign entities, and as such, were not prevented from bringing suit in Louisiana in their own names rather than through a trustee.

On August 13, 2021, Pleasant and Brown filed their answer to the petition, generally denying the allegations contained therein, and asserting as affirmative defenses that plaintiff had no right of action, lacked procedural capacity, and filed a petition that is too vague.

On December 12, 2022, NCSLT 2004-1 moved for summary judgment, arguing that Pleasant and Brown failed to raise any genuine issue of material fact in their affirmative defenses, which were the same arguments the trial court rejected in its ruling on their exceptions. NCSLT 2004-1 further argued that Pleasant and Brown did not produce any evidence

to controvert the Kimbrough affidavit, which certified that all business records attached to the petition were true and accurate.

Pleasant and Brown opposed the motion on March 16, 2023, arguing that the information provided in Ms. Kimbrough's affidavit was not based on personal knowledge and provided only conclusory remarks by an individual who has no "standing or foundation to testify to the accuracy of such information." The crux of Pleasant and Brown's argument was that it was insufficient for Ms. Kimbrough to simply declare that she had personal knowledge of the accounts; rather, it had to be affirmatively established that she was competent to testify about the matters in question.

Appellants also signed and filed an affidavit in support of their opposition asserting the balance due on the Loan was "far less than $90,000.00." Appellants acknowledged that they obtained "student loan funds from a student loan lender, who, in turn, assigned the student loan account to one of the trusts." Appellants also urged that testimony was needed to attest to the validity of the account balance and to clarify the incomplete loan history report submitted by NCSLT 2004-1. Notably, no payment receipts or other documents were referenced in or attached to their affidavit.

On April 11, 2023, the trial court heard argument on Pleasant and Brown's motion to consolidate and NCSLT 2004-1's motion for summary judgment and ruled as follows:

As to Pleasant and Brown's motion to consolidate:

I'm going to deny the consolidation motion. Here's why. This case alone that we just talked about, the Patsy Brown case, would support that because you got a whole lot of different little things that go on with that particular one. Which in a

similar vein may apply to other ones. So, maybe it would be better that each one stand because of their own particulars.

And as to NCSLT 2004-1's motion for summary judgment:

[The] Court would ask the record to reflect that the motion for summary judgment is granted in that this court finds the lack of any genuine issue as to any material fact remaining and the moving party is entitled to judgment as a matter of law in the [Code of Civil Procedure] 966.

On October 19, 2023, the trial court signed a judgment for NCSLT 2004-1 in the full amount prayed for in the petition. This appeal ensued.

## DISCUSSION

*Summary Judgment*

Appellants argue that the trial court erred by granting summary judgment in favor of NCSLT 2004-1 because the affidavits it submitted in support of its motion were not based on personal knowledge and the original promissory note was not provided. Appellants assert that NCSLT 2004-1 did not even allege in its petition, motion for summary judgment, or affidavits that it is the holder entitled to enforce the promissory note at issue.

Appellants also take issue with the affidavit of Ms. Kimbrough. Appellants argue that Ms. Kimbrough, as an employee of Transworld, cannot attest to the records of AES, the original servicer of the loan, because she lacks personal knowledge. Even if they are alleged to be business records, appellants assert that an employee of Transworld cannot authenticate the business records of AES. Appellants argue that NCSLT 2004-1 has not produced any documentation that originates with them, that has been attested to by the original servicer, that purports to evidence the amount owed, or that shows NCSLT 2004-1 is the owner, holder, or assignee of any loan alleged to be Pleasant's.

8

NCSLT 2004-1 argues that the trial court correctly granted summary judgment because there is no genuine dispute that Pleasant and Brown are indebted to NCSLT 2004-1 in the amounts sought. NCSLT 2004-1 avers that the trial court was not bound to the evidentiary standards of proof for actions on negotiable instruments, such as the requirement that it produce the original note, because its action was not one on a negotiable instrument, but rather a Credit Agreement which provides that Article 3 of the UCC is inapplicable. NCSLT 2004-1 also notes that the contract at issue is titled "Non-Negotiable Credit Agreement." Appellee further points to language in the contract providing that the fax printout received by the lender constitutes an "original" of that agreement.

NCSLT 2004-1 also argues that the trial court did not abuse its discretion in finding the relevant loan documents and payment records were properly authenticated by Ms. Kimbrough's affidavit because her affidavit fits within the business records exception to the hearsay rule. NCSLT 2004-1 notes that Ms. Kimbrough demonstrated in her affidavit that she was an employee of Transworld, its subservicer, and in that capacity was the designated custodian of defaulted loan records, and therefore qualified to identify its business records. NCSLT 2004-1 further points out that Ms. Kimbrough demonstrated her familiarity with the manner and procedure by which the loan documents were created and maintained, and that she confirmed she reviewed the relevant documents and payment records attached to her affidavit and on which she relied.

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed

for by a litigant. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So. 2d 880; *Driver Pipeline Co. v. Cadeville Gas Storage, LLC*, 49,375 (La. App. 2 Cir. 10/1/14), 150 So. 3d 492, *writ denied*, 14-2304 (La. 1/23/15), 159 So. 3d 1058. Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by La. C.C.P. art. 969(A)(2). The procedure is favored and shall be construed to accomplish those ends. La. C.C.P. art. 966(A)(2).

Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Leisure Recreation & Ent., Inc. v. First Guar. Bank*, 21-00838 (La. 3/25/22), 339 So. 3d 508; *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791; *Elliott v. Cont'l Cas. Co.*, 06-1505 (La. 2/22/07), 949 So. 2d 1247; *Davis v. Whitaker*, 53,850 (La. App. 2 Cir. 4/28/21), 315 So. 3d 979.

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A material fact is one that potentially ensures or precludes recovery, affects the ultimate success of the litigant, or determines the outcome of the dispute. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material for summary judgment purposes can be seen only in light of the substantive law applicable to the case. *Jackson v. City of New Orleans*, 12-2742 (La. 1/28/14), 144 So. 3d 876; *Richard v. Hall*, 03-1488 (La. 4/23/04), 874 So. 2d 131.

A genuine issue is one about which reasonable persons could disagree. *Suire v. Lafayette City-Parish Consol. Gov't*, 04-1459, p. 11 (La. 4/12/05), 907 So. 2d 37, 48, *citing Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, (La. 7/5/94), 639 So. 2d 730; *Franklin v. Dick*, 51,479 (La. App. 2 Cir. 6/21/17), 224 So. 3d 1130. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Suire v. Lafayette City-Parish Consol. Gov't, supra; Chanler v. Jamestown Ins. Co.*, 51,320 (La. App. 2 Cir. 5/17/17), 223 So. 3d 614, *writ denied*, 17-01251 (La. 10/27/17), 228 So. 3d 1230.

On a motion for summary judgment, the burden of proof rests with the mover. La. C.C.P. art. 966(D)(1). If the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id.*

Here, appellants insist that NCSLT 2004-1 was required to provide the trial court with the original promissory note at issue. Such insistence is misplaced. This is not an *in rem* executory proceeding where production of the original note would be required. *See* La. C.C.P. art. 2635. Rather, this suit is a breach of contract case where the rules for ordinary process apply.

11

*Nat'l Collegiate Student Loan Trust 2006-1 v. Huggins*, 55,786 (La. App. 2 Cir. 10/2/24), 2024 WL 4364586.

Moreover, this suit was never an action on a negotiable instrument, nor was it represented to be such. For instance, the contract explicitly disclaims any application of Article 3 of the UCC, and provides:

> If I choose to fax my signature on this Application / Promissory Note to Lender, I intend: (i) my fax signature to be binding on me and to be an electronic signature under applicable federal and state law, (ii) the fax printout received by the Lender to be an original document ... and (iv) that this Application / Promissory Note will not be governed by Article 3 or Article 9 of the Uniform Commercial Code.

The quoted provision is important for two reasons. First, it confirms that Pleasant and Brown's obligation is not in the nature of negotiable or bearer paper. Rather, appellants' obligation to repay arises from an ordinary written contract, which NCSLT 2004-1 has the right to enforce because it acquired the original lender's rights pursuant to a subsequent sale and assignment. Second, it confirms the fax-returned Credit Agreement (as plainly indicated by the fax header information in the top margin of the page) constitutes an "original" of that agreement. Accordingly, we cannot say that NCSLT 2004-1 was required to produce the original promissory note to enforce the debt on this student loan contract.

Appellants also contend that the Pool Supplement by which Bank One sold the loan to NCSLT 2004-1's predecessor-in-title, NCF, failed to specifically reference and include the loan in that sale. This is similarly misplaced. In fact, the Pool Supplement explicitly "transfers, sells, sets over and assigns to [NCF] each EDUCATION ONE Loan described in the attached Schedule 2." The loan at issue here is indeed an "Education One"

loan and it is specifically identified and included in Schedule 2. Additionally, attached to Ms. Kimbrough's affidavit is a printout of the exact information contained in the full loan schedule pertaining solely to the loan at issue.

Appellants' attack on the ability of Ms. Kimbrough to attest to the accounting of the amount due on the loan also misses the mark because it elides the "business records" exception to the hearsay rule. Where business records are concerned, "the courts have deemed [the requirement for personal knowledge] satisfied when the affiant is qualified to identify the business records as such." *U.S. Bank Nat'l Ass'n as Tr. for RFMSI 2005S7 v. Dumas*, 22-0604 (La. App. 1 Cir. 4/3/23), 363 So. 3d 1232, 1236-37, *writ denied*, 23-00733 (La. 9/26/23), 370 So. 3d 478. Moreover, where the affiant is familiar with the account and business records, "it is not necessary for the affiant to show that he personally prepared the business records or that he had direct, independent, first-hand knowledge of their contents." *Regions Bank v. La. Pipe & Steel Fabricators, LLC*, 11-0839 (La. App. 1 Cir. 12/21/11), 80 So. 3d 1209, 1213.

Here, Ms. Kimbrough demonstrated her familiarity with the manner and procedure by which the loan documents were created and maintained. She also confirmed that she actually reviewed the relevant documents and payment records attached to her affidavit and on which relied:

> I am … competent and authorized to testify regarding this educational loan through my review of the business records maintained by [Transworld] as custodian of records. These records include electronic data provided to [Transworld] related to the educational loan, and the business records attached to this Affidavit.

13

Appellants make much of the fact that records were provided to Transworld rather than originating with Transworld. However, the business records exception to the hearsay rule does not preclude the introduction of incorporated business records originally generated by another business, if such records were properly authenticated and determined to be trustworthy by the trial court. *Bishop v. Shaw*, 43,137 (La. App. 2 Cir. 3/12/08), 978 So. 2d 568. Therefore, under La. C.E. art. 803(6), the custodian of the record "or other qualified witness" can establish the essential foundational predicate for admissibility of business records without having prepared the records. *Achary Elec. Contractors*, *L.L.C. v. SimplexGrinnell LP*, 15-542 (La. App. 5 Cir. 1/27/16), 185 So. 3d 888.

We find that the affidavit satisfies the requirements of La. C.E. art. 803(6). Ms. Kimbrough's affidavit establishes that the attached documents: (1) were obtained by Transworld from AES and were "kept as part of regularly conducted business activity at or near the time of the event recorded"; (2) the "loan records were created, compiled or recorded from information transmitted by a person with personal knowledge; (3) "[s]uch records are created, kept, maintained, accessed and relied upon in the course of ordinary and regularly conducted business activity"; and (4) it was "[Transworld's] regularly-conducted business practice to incorporate these loan records into the system of record it maintains on [NCSLT's] behalf."

Authentication is "a condition precedent to admissibility" which is satisfied by "evidence sufficient to support a finding that the [document] is what its proponent claims." La. C.E. art. 901(A). The standard of review in reviewing evidentiary rulings of a trial court is abuse of discretion. *Johnson*

14

*v. First Nat'l Bank of Shreveport*, 00-870 (La. App. 3 Cir. 6/20/01), 792 So. 2d 33, *writs denied*, 01-2770 (La. 1/4/02), 805 So. 2d 212, 01-2783 (La. 1/4/02), 805 So. 2d 213.

Pleasant and Brown fail to show that the trial court abused its discretion on this evidentiary issue because they are unable to show the loan documents and payment record evidence are not what NCSLT 2004-1 purports them to be. They do not raise any factual issue with the documents' appearance or contents by pointing out any potential discrepancy in the date(s) or anomaly in subject matter(s) of the documents with the known facts regarding the loan. Nor do they attempt to show that student loan documents and transactional records customarily include information not contained within the materials presented in evidence which might impact the veracity of the documents. Nor did they come forward in the trial court with any countervailing evidence, either in the form of their own banking or credit account records, or any correspondence or mailings to the original lender or anyone else, that call into question NCSLT 2004-1's calculation of the unpaid indebtedness.

Accordingly, we find there remain no genuine issues of material fact and that the trial court correctly granted NCSLT 2004-1's motion for summary judgment.

*No Right of Action and Lack of Procedural Capacity*

Appellants argue that the trial court erred by overruling their peremptory exceptions of no right of action and lack of procedural capacity by failing to apply Louisiana procedural rules to find that NCSLT 2004-1 is an express trust and cannot sue in its own name, but rather through a trustee.

Appellants assert that NCSLT 2004-1's attempt to characterize the trust as a statutory trust under Delaware law is misplaced since it decided to file suit in Louisiana and the relevant provision of Delaware law makes no reference to extraterritoriality.

Appellants also note that only the trustee has the capacity to file suit on behalf of an express trust in Louisiana courts and that when the trust itself files suit, it lacks a right of action. Appellants further aver that even under Delaware law, a statutory trust must have at least one trustee who will carry out the trust's business, including filing and defending lawsuits in foreign states.

Appellee argues that the trial court correctly overruled appellants' dilatory exception of lack of procedural capacity because, as a Delaware statutory trust, NCSLT 2004-1 is an unincorporated entity that has capacity to sue in its own name. NCSLT 2004-1 argues that as a business trust rather than an express trust, Louisiana law recognizes it as a juridical person in its definition of "unincorporated entity" in the Louisiana Business Corporation Act.

NCSLT 2004-1 further argues that Louisiana is constitutionally compelled to recognize its status under Delaware law via the Full Faith and Credit Clause of the United States Constitution. NCSLT 2004-1 notes that the United States Supreme Court, federal agencies, and state courts from other jurisdictions have all recognized the existence of Delaware statutory trusts as independent business entities. NCSLT 2004-1 avers that since it is not an express trust, La. C.C.P. art. 699 does not prohibit it from accessing Louisiana courts except through a trustee. NCSLT 2004-1 also points out

16

that appellants do not attempt to distinguish the Third Circuit case of *NCSLT 2006-1 v. Thomas, supra*, or even mention that the relief they seek would necessarily result in a circuit split.

NCSLT 2004-1 argues that the trial court correctly overruled appellants' peremptory exception of no right of action because NCSLT 2004-1 pled its purchase and assignment of their student loan obligations. NCSLT 2004-1 avers that its petition with supporting affidavit and exhibits establish that it acquired the obligation at issue, has owned the student loan debt ever since, and is the proper party with the right of action to assert its breach of contract claim.

Lack of procedural capacity is a dilatory exception which tests a party's legal capacity to bring an action or have an action brought against it. *Stonecipher v. Caddo Parish*, 51,148 (La. App. 2 Cir. 4/7/17), 219 So. 3d 1187. The determination of whether a party has the procedural capacity to sue or be sued involves a question of law, which is reviewed under the *de novo* standard of review to determine whether the ruling of the trial court was legally correct. *Woodard v. Upp*, 13-0999 (La. App. 1 Cir. 2/18/14), 142 So. 3d 14.

When considering the peremptory exception of no right of action, a court must begin with the assumption that the petition states a valid cause of action; the only question is whether the plaintiff in a particular case is a member of the class that has a legal interest in the subject matter of the litigation. *See Bryan v. Griggs*, 48,579 (La. App. 2 Cir. 11/20/13), 128 So. 3d 1255, *citing La. Paddlewheels v. La. Riverboat Gaming Comm'n*, 94-2015 (La. 11/30/94), 646 So. 2d 885. The burden of proof of establishing

the exception of no right of action is on the party raising the exception. *Kennedy v. Saheid*, 51,044 (La. App. 2 Cir. 1 1/16/16), 209 So. 3d 985, *writ denied*, 16-2241 (La. 1/23/17), 215 So. 3d 681.

In *NCSLT 2006-1 v. Thomas, supra*, the Third Circuit found that the NCSLT trust involved in that case was a business trust established under Delaware law, and as such must be recognized as an unincorporated foreign entity under Louisiana statutory law, citing La. R.S. 12:1-140(24)(B) and La. R.S. 12:1-140(10)(B). The court further held that Louisiana law does not deprive a business trust that is recognized in Delaware as a juridical person the same capacity it has in Delaware to bring a civil suit in a Louisiana state court. *NCSLT 2006-1 v. Thomas, supra* at p. 7, 322 So. 3d at 380-381.

We agree with the rationale behind the Third Circuit's decision. NCSLT 2004-1 does not fit the definition of a Louisiana express trust because there has been no transfer of ownership of property to a trustee; rather, NCSLT 2004-1 owns appellants' loan and other loans in its portfolio. *See Id*. Said another way, NCSLT 2004-1 cannot be an express trust under Louisiana law because NCSLT 2004-1, and not its trustees, own its loans. Moreover, both the Louisiana Trust Code and the Louisiana Uniform Commercial Code include business trusts in the definition of "person," and a comment to the La. U.C.C. provides that if "a trust arising in another state has a separate legal existence as a juridical person under the laws of that state, then this definition permits that entity to be a person for purposes of [the La. U.C.C.]" La. R.S. 10:1-201, La. Rev. Comm. 2006, 27.

Such is the case here. NCSLT 2004-1 is a statutory trust, organized under Delaware law, and it acquired Pleasant and Brown's loan for and by

18

itself, as evidenced by the Deposit and Sale Agreement by which it acquired the loan.

We find that the *NCSLT 2006-1 v. Thomas* opinion accurately reflects Louisiana law, which recognizes Delaware statutory trusts like NCSLT 2004-1 as a juridical person or entity with the capacity to sue in its own name. As such, Pleasant and Brown's exceptions of lack of procedural capacity and no right of action were correctly overruled.

*Motion to Consolidate*

Appellants argue that the trial court erred and abused its discretion by denying their motion to consolidate 12 student loan cases involving nearly identical parties with similar allegations. Appellants note that an NCSLT-adjacent entity filed six student loan cases against Richard Pleasant and six against Kristen Pleasant, who are husband and wife and who share the same guarantor, Brown. Appellants aver that the facts, circumstances, law, and arguments are almost identical in all 12 cases, and that it would serve the interests of justice and judicial economy to consolidate them.

NCSLT 2004-1 argues that the trial court did not abuse its discretion in denying Pleasant and Brown's motion to consolidate because it correctly recognized that each action they seek to consolidate involves numerous underlying facts that are subject to their own proofs. NCSLT 2004-1 also points out that while the actions defendants sought to have consolidated all involve Delaware statutory trust plaintiffs, they are in fact distinct entities.

As a general rule, a trial court has wide latitude with regard to the consolidation of suits pending in the same court. *Boh v. James Indus. Contractors, L.L.C.*, 03-1211 (La. App. 4 Cir. 2/11/04), 868 So. 2d 180, *writ*

19

*denied*, 04-0456 (La. 3/5/04), 869 So. 3d 801. Consolidation of cases wherein the court finds that common issues of facts and law predominate and that judicial economy will be served by the consolidation is allowed under La. C.C.P. art. 1561; *Id.* A trial court's authority to consolidate under La. C.C.P. art. 1561 is discretionary, and, therefore, its decision is reviewed for an abuse of discretion. *See Sutton v. Adams*, 19-0795 (La. App. 4 Cir. 10/12/22), 351 So. 3d 411; *see also Bonnette v. Tunica-Biloxi Indians*, 02-0919 (La. App. 3 Cir. 5/28/03), 873 So. 2d 1. Consolidation shall not be ordered if it would, among other things, cause jury confusion or prejudice the rights of any party. La. C.C.P. art. 1561.

Here, each case Pleasant and Brown seek to consolidate involves distinct plaintiffs and defendants with separate loan notes and affidavits for each. In other words, each action is subject to its own unique set of facts with different contracts dictating each one. This is not a situation where common issues of law and fact predominate. Rather, the various actions Pleasant and Brown seek to consolidate are appropriately litigated separately. We find that consolidation of these cases that involve distinct parties with distinct fact patterns would lead to jury confusion, and that either side could be prejudiced because of such confusion. *See* La. C.C.P. art. 1561.

Accordingly, the trial court did not abuse its discretion when it denied Pleasant and Brown's motion to consolidate.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's ruling granting NCSLT 2004-1's motion for summary judgment and overruling Pleasant and

Brown's exceptions of lack of procedural capacity and no right of action, and denying their motion for consolidation.  Costs of this appeal are assessed to appellants.

**AFFIRMED.**